173 P.3d 245 (2007)
STATE of Washington, Respondent,
v.
Mickey William BROWN, Petitioner.
No. 77885-0.
Supreme Court of Washington, En Banc.
Argued September 14, 2006.
Decided December 13, 2007.
*246 Carol A. Elewski, Attorney at Law, Tumwater, for petitioner.
Patrick T. Johnson, Jr., Attorney at Law, Spokane, Andrew J. Metts III, Spokane, for Respondent.
C. JOHNSON, J.
¶ 1 Following a bench trial, defendant Mickey William Brown (Brown) was convicted of intimidating a witness and first degree burglary while armed with a deadly weapon, a firearm. The Court of Appeals affirmed the convictions, holding that although Brown was charged in the language of an outdated version of the witness intimidation statute, that language was unnecessary to a charge under the present statute and could be disregarded as surplusage. The Court of Appeals also upheld the trial court's determination that Brown was armed with a deadly weapon during commission of the burglary because a rifle that was taken from the victim's closet and placed on a bed was readily available and accessible while Brown and an accomplice ransacked the victim's house, including the bedroom where the gun was found. We reverse Brown's conviction for witness intimidation, and reverse the holding that Brown was armed with a deadly weapon during the commission of burglary and was improperly convicted of first degree burglary, and we reverse imposition of a deadly weapon sentence enhancement.

FACTS
¶ 2 On August 6, 2001, Craig Ambacher returned to his residence and discovered that it had been burglarized. Although rooms had been ransacked and many of his belongings were gathered at various points in the house, nothing was missing. He found a rear sliding door open, and believed he had interrupted a burglary.
¶ 3 Ambacher found his unloaded AK 47 rifle on the bed in the master bedroom a short distance from the closet where it was normally kept. An ammunition clip for a different rifle was lying on the bed next to the rifle. The nightstand had been emptied out, as had a chest of drawers. Ambacher owned a 9 mm pistol he kept under his bed, along with VCRs (videocassette recorders). The VCRs had been pulled out, but not the pistol.
¶ 4 At the time of the burglary, Melissa Hill was living with the Browns. Hill saw Brown and Lenny Brown, the defendant's cousin, return home after the burglary. When she joined them in the basement of the Browns' home, she heard them talking about having burglarized a house. The defendant said they had been caught in the middle of *247 the burglary. She testified that she heard one of the two men say that the guns were nice and he wished they could have gotten them, and that Brown said he thought he could get a lot of money for the guns.
¶ 5 Hill testified that Brown told her that she would "pay" if she spoke to the police. She believed this threat was a credible threat against her personal safety and a threat of violence. She testified that Brown was mad and yelling and that Lenny Brown defended her and told Brown to stop yelling and to calm down.
¶ 6 Upon discovering that the house had been burglarized, the victim, Ambacher, went to the front of the house and wrote down the license plate number of Brown's car, left on the street across from Ambacher's house, and the license plate number of a car he saw used to retrieve Brown's car. The license plate numbers led the investigating police officers to Brown and Lenny Brown, as well as to Melissa Hill, who was a key witness for the State against Brown at his trial.
¶ 7 As a result of his threat against Hill, Brown was charged with intimidating a witness. The information charged this offense in language appearing in a 1994 former version of RCW 9A.72.110  language that was deleted by the legislature when it amended the statute in 1997. Brown was also charged with first degree burglary based on the fact that he or another participant in the crime was armed with a deadly weapon, a firearm, i.e., the AK 47 rifle found on the bed in the victim's home.
¶ 8 Brown waived the right to a jury trial, and the trial court found him guilty of the offenses charged. Among other things, the court concluded that "the gun lying on the bed would make the gun readily accessible to those who were in the process of ransacking this [master bed]room looking for bounty." Verbatim Report of Proceedings (VRP) at 196 (Feb. 12, 2002). The court imposed concurrent sentences for the witness intimidation and first degree burglary convictions and imposed a firearm sentence enhancement.
¶ 9 Brown appealed. He argued the evidence was insufficient to support his conviction for intimidating a witness, that he was not armed for purposes of first degree burglary or the sentence enhancement, that his offender score was miscalculated, and that he received ineffective assistance of counsel. Acting on his own, Brown filed a statement of additional grounds for review raising a number of issues, some of them involving challenges to the denial of his posttrial motions.
¶ 10 In an unpublished opinion, the Court of Appeals concluded that ineffectiveness of counsel had not been established, affirmed the convictions and the firearm sentence enhancement, and found the issues raised in Brown's statement of additional grounds for review to be without merit. However, because the State conceded that Brown's offender score had been incorrectly calculated, the Court of Appeals remanded for resentencing. State v. Brown, noted at 129 Wash. App. 1004, 2005 WL 2001083, 2005 Wash. App. LEXIS 2090.

ANALYSIS
¶ 11 Brown first contends that his conviction for intimidating a witness must be reversed because it is not supported by sufficient evidence. A defendant's challenge to the sufficiency of the evidence requires the reviewing court to view the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the elements of the charged crime beyond a reasonable doubt. State v. Hosier, 157 Wash.2d 1, 8, ¶ 9, 133 P.3d 936 (2006); State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). "All reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." Hosier, 157 Wash.2d at 8, ¶ 9, 133 P.3d 936; Salinas, 119 Wash.2d at 201, 829 P.2d 1068. "A claim of insufficiency admits the truth of the State's evidence" and all reasonable inferences. Salinas, 119 Wash.2d at 201, 829 P.2d 1068.
¶ 12 RCW 9A.72.110 provides in part:
(1) A person is guilty of intimidating a witness if a person, by use of a threat against a current or prospective witness, attempts to:

*248 (a) Influence the testimony of that person;
(b) Induce that person to elude legal process summoning him or her to testify;
(c) Induce that person to absent himself or herself from such proceedings; or
(d) Induce that person not to report the information relevant to a criminal investigation or the abuse or neglect of a minor child, not to have the crime or the abuse or neglect of a minor child prosecuted, or not to give truthful or complete information relevant to a criminal investigation or the abuse or neglect of a minor child.
¶ 13 Subsections (a) through (d) describe alternative means of committing the crime of intimidating a witness. State v. Boiko, 131 Wash.App. 595, 599, ¶ 10, 128 P.3d 143 (2006); State v. Chino, 117 Wash.App. 531, 539, 72 P.3d 256 (2003).
¶ 14 As noted, the information charged Mr. Brown under a former version of RCW 9A.72.110: "That the defendant, MICKEY WILLIAM BROWN, in the State of Washington, on or about August 29, 2001, by use of a threat directed to Melissa Hill, a person that the defendant had reason to believe was about to be called as a witness in an official proceeding, did attempt [to] influence the testimony of such person." Clerk's Papers (CP) at 1-2 (emphasis added).[1] Brown argues that the State must prove all the elements of the crime as charged, despite the information's obvious reference to an outdated statute. The Court of Appeals held, however, that because the statute had been amended to eliminate a requirement of a pending official proceeding, the words in the information referring to a witness in an official proceeding constituted a factual allegation that could be disregarded as surplusage rather than as stating an element of the crime. Brown contends that the Court of Appeals erred in holding that the language was surplusage.
¶ 15 Regardless whether the language was surplusage, we conclude the evidence is insufficient to support Brown's conviction. When the outdated language referring to an official proceeding is disregarded, the information charges Mr. Brown with intimidating a current or prospective witness by attempting to influence the testimony of the witness by use of a threat. This is a valid charge under the current version of the statute, specifically RCW 9A.72.110(1)(a). The problem, however, is that the State did not prove that Brown threatened Hill in an attempt to influence her testimony. Rather, the only evidence presented, even when viewed most favorably to the State as required, shows that Brown threatened Hill in an attempt to prevent her from providing any information to the police. Further, the trial court did not enter any finding relating to an attempt to influence Hill's testimony. Thus, the evidence was insufficient to support the crime that the State did charge, with or without the "surplusage."
¶ 16 Accordingly, his conviction must be reversed because the evidence does not support a conviction for intimidating a current or prospective witness through an attempt to influence her testimony by use of a threat  the only one of the four alternative statutory means of committing the crime that the information can be read to charge.
¶ 17 Mr. Brown next contends that the Court of Appeals failed to correctly apply the "nexus test" to determine whether he was armed for purposes of both his conviction for first degree burglary and the firearm sentence enhancement. The Court of Appeals *249 concluded that the trial court's findings were sufficient to show that Brown was armed. The trial court found:
The defendant removed a gun, a 7.62 mm rifle, from the closet and placed the rifle on the bed in the master bedroom, a distance of six to seven feet from the closet. The defendant placed a gun clip near the rifle, although the clip did not match the rifle. The gun was not loaded at any time during the burglary. The rifle was accessible to the defendant and his accomplice during the course of the burglary, particularly while the defendant sorted through the dresser drawers of the bedroom.
The defendant and accomplice were interrupted during the course of the burglary by the sound of the homeowner's return, and the opening of his electric garage door.
CP at 15. A close review of the testimony does not support the trial court's findings and conclusions.
¶ 18 The testimony from the homeowner established only that the rifle had been moved from the closet to a bed and nothing more. Testimony from the prosecution witness Hill, comes closest to testifying about the weapons. She testified she heard Brown or Lenny Brown talking about guns. She testified that they expressed a desire to have gotten the guns. She did not testify to hearing anything indicating that either of them moved the rifle or knew of its existence during the crime.
¶ 19 Viewed most favorably to the State, the evidence supporting the first degree burglary charge and weapons enhancement and whether Brown was armed comes from the homeowner, whose testimony established that a rifle was moved from the closet to the bed, along with other property. The issue thus becomes whether under these facts, where a weapon was moved during a burglary, if that evidence is sufficient to establish that a defendant is armed.
¶ 20 Our cases have recognized that the mere presence of a deadly weapon at the scene of the crime, mere close proximity of the weapon to the defendant, or constructive possession alone is insufficient to show that the defendant is armed. State v. Barnes, 153 Wash.2d 378, 383, 103 P.3d 1219 (2005); State v. Schelin, 147 Wash.2d 562, 567, 570, 55 P.3d 632 (2002); State v. Gurske, 155 Wash.2d 134, 138, 118 P.3d 333 (2005). A person is armed with a deadly weapon if it is easily accessible and readily available for use for either offensive or defensive purposes. State v. Easterlin, 159 Wash.2d 203, 208-09, 149 P.3d 366 (2006); Barnes, 153 Wash.2d at 383, 103 P.3d 1219; Gurske, 155 Wash.2d at 137, 118 P.3d 333; State v. Valdobinos, 122 Wash.2d 270, 282, 858 P.2d 199 (1993). And there must be a nexus between the defendant, the crime, and the weapon. Easterlin, 159 Wash.2d at 209, 149 P.3d 366; Gurske, 155 Wash.2d at 140-41, 142, 118 P.3d 333; State v. Willis, 153 Wash.2d 366, 373, 103 P.3d 1213 (2005); Schelin, 147 Wash.2d at 567-70, 575, 55 P.3d 632. To apply the nexus requires analyzing "the nature of the crime, the type of weapon, and the circumstances under which the weapon is found." Schelin, 147 Wash.2d at 570, 55 P.3d 632.
¶ 21 Here, the crime was burglary and the type of weapon was a rifle at the scene. However, the circumstance under which the weapon was found does not support a conclusion that Brown was "armed" as intended by the legislature.[2] Specifically, when the homeowner arrived, the rifle was found on the bed after Brown and his accomplice had left the scene. Also, Brown and/or his accomplice evidently had removed property from under the bed but left a pistol in that same location untouched. No evidence exists that Brown or his accomplice handled the rifle on the bed at any time during the crime in a manner indicative of an intent or willingness to use it in furtherance of the crime. In fact, Hill's testimony indicates that the weapon here was regarded as nothing more than valuable property.
*250 ¶ 22 The dissent relies too heavily on evidence that either Brown or his accomplice moved the rifle on the bed. The dissent argues the facts "show a connection between the weapon and the crime, because during the course of committing the crime of burglary one of the defendants had the rifle in hand and could have used it for offensive or defensive purposes." Dissent at ___, 173 P.3d at 254. The dissent is essentially arguing that any actual possession of a deadly weapon during an ongoing crime shows a nexus between the weapon and the crime.
¶ 23 Showing that a weapon was accessible during a crime does not necessarily show a nexus between the crime and the weapon. "[T]he mere presence of a weapon at a crime scene may be insufficient to establish the nexus between a crime and a weapon." Schelin, 147 Wash.2d at 570, 55 P.3d 632. Likewise, "`[s]imply constructively possessing a weapon on the premises sometime during the entire period of illegal activity is not enough to establish a nexus between the crime and the weapon.'" Schelin, 147 Wash.2d at 570, 55 P.3d 632 (quoting State v. Johnson, 94 Wash.App. 882, 895, 974 P.2d 855 (1999)). "[A] person is not armed merely by virtue of owning or even possessing a weapon; there must be some nexus between the defendant, the weapon, and the crime." State v. Eckenrode, 159 Wash.2d 488, 493, 150 P.3d 1116 (2007).
¶ 24 Our analysis in Schelin underscores that proximity alone does not establish a nexus between the crime and the weapon. In Schelin, the defendant hung a loaded pistol from a basement wall near where defendant had a marijuana grow operation. When police arrived they found Schelin standing near the pistol. The "direct evidence concerning Schelin's location at the time police officers entered the home" supported both a finding "that Schelin had constructive possession of an easily accessible and readily available deadly weapon." However, as a separate matter, "[w]hether Schelin was `armed' . . . requires the court to establish that a nexus existed." Schelin, 147 Wash.2d at 574, 55 P.3d 632. To establish the nexus between the crime and a weapon one should examine the nature of the crime, the type of weapon or weapons, and the circumstances under which the weapon is found. Applied to the facts of this case, this analysis shows why it is not determinative that the defendant or his accomplice merely touched a weapon in the course of a crime.
¶ 25 The dissent also argues that inquiry into the defendant's intent or willingness to use the rifle is a condition in the nexus requirement that does not appear in any of this court's prior cases. We disagree.
¶ 26 In Eckenrode, police responded to Eckenrode's report of an intruder in his home. Police arrived and swept the house, finding inside the home a loaded rifle, unloaded pistol, and evidence of a marijuana growing operation. Police arrested Eckenrode in his front yard, "far from his weapons." Reviewing the facts, we said:
The rifle was loaded at the time, and Eckenrode testified that the pistol was as well. Eckenrode also had a police scanner, which, together with his manufacturing operation, raises the inference that he was monitoring police activity against the chance he might be raided. Finally, evidence of the drug manufacturing operation pervaded the house. A jury could readily have found that the weapons were there to protect the criminal enterprise.

Eckenrode, 159 Wash.2d at 494, 150 P.3d 1116 (emphasis added). Likewise, in Schelin we said that the nexus test "as expressed in Johnson" would enable a jury to infer that Schelin "was using the weapon to protect his basement marijuana grow operation." 147 Wash.2d at 574, 55 P.3d 632.[3] These cases demonstrate that the defendant's intent or willingness to use the rifle is a condition of the nexus requirement that does, in fact, appear in Washington cases.[4]
*251 ¶ 27 The dissent states, but does not apply, the principle that "`where the weapon is not actually used in the commission of the crime, it must be there to be used.'" Dissent at ___, 173 P.3d at 254 (second emphasis added) (quoting Gurske, 155 Wash.2d at 138, 118 P.3d 333). Here the facts suggest that the weapon was merely loot, and not there to be used. Evidence that the rifle was briefly in a burglar's possession, without more, does not make Brown armed within the meaning of the sentencing enhancement statutes.
¶ 28 Though the use of a weapon in the commission of a crime is not constitutionally protected, adherence to the nexus analysis is also important in harmonizing the mandatory sentence enhancements with the constitutional right to bear arms. See Schelin, 147 Wash.2d at 575, 55 P.3d 632 (right to bear arms could be negatively impacted without temporal nexus requirement). Brown's right to bear arms is not implicated here. But the sentencing enhancement applies to a broad array of felonies. RCW 9.94A.533(3). Requiring both that the weapon be readily available and easily accessible, as well as a nexus based on the facts of the case, limits the definition of being armed to those situations the statutes are aimed at controlling. None of those statutory concerns are implicated under these facts.[5]

CONCLUSION
¶ 29 We reverse the Court of Appeals. The deadly weapon enhancement and first degree burglary conviction are vacated, as is the conviction for witness intimidation.
WE CONCUR: Chief Justice GERRY L. ALEXANDER, Justice TOM CHAMBERS, Justice RICHARD B. SANDERS and Justice JAMES M. JOHNSON.
SANDERS, J. (concurring).
¶ 30 I concur in the majority. I write separately to highlight the deficiency in the dissent's reasoning that theft of a firearm ipso facto yields a firearm enhancement.
¶ 31 The dissent advocates a rule characterizing one as "armed" when a firearm is "easily accessible and readily available." See dissent at ___, ___, ___, ___, ___ n. 3, ___, ___, 173 P.3d at 253, 254, 255, 257, 257 n. 3, 258, 259. However, this is only one aspect of our analysis; there must also be a *252 nexus between the defendant, the crime, and the weapon. See majority at ___, 173 P.3d at 249. This court has never articulated a comprehensive definition of the nexus, but according to the dissent the nexus exists whenever the criminal so much as touches a firearm during the commission of a crime, or perhaps not even that. Dissent at ___, 173 P.3d at 254. In other words, according to the dissent, a criminal is "armed" if a firearm is used not only to facilitate the crime but also if it is the object of the crime. Such a view robs the term "armed" of any meaningful nexus between the defendant, the crime, and the weapon where the presence of a firearm is incidental to, and independent of, the commission of the crime. Such a view also robs the term of its actual meaning. This is not to say a firearm as an object of crime cannot blossom into a firearm as a facilitator of crime. Under the facts of this case, however, such blossoming did not occur; the firearm remained merely a possible object of the crime. The dissent calls this an absurd result. Dissent at ___, 173 P.3d at 253. To the contrary, the dissent's reasoning leads to the absurd result.
¶ 32 To examine our firearm enhancement jurisprudence suffice to say:
The theory behind the deadly weapon enhancement is that a crime is potentially more dangerous to the victim, bystanders or the police if the defendant is armed while he is committing the crime because someone may be killed or injured. Thus, the crime is more serious than it would have been without the weapon. Where no officers, victims or bystanders are present, the potential danger is also absent, and the rationale for greater punishment based on greater danger to others does not apply. The underlying rationale can apply only where there is a possibility the defendant would use the weapon.
State v. Johnson, 94 Wash.App. 882, 896, 974 P.2d 855 (1999).
¶ 33 We have held a firearm enhancement requires "a nexus to connect a defendant to a deadly weapon, and the weapon to the crime, guard[ing] against a deadly weapon enhancement being found whenever constructive possession is established." State v. Schelin, 147 Wash.2d 562, 575, 55 P.3d 632 (2002). "Without a nexus between the defendant, the crime, and the weapon, `courts run the risk of punishing a defendant under the deadly weapon enhancement for having a weapon unrelated to the crime.'" State v. Gurske, 155 Wash.2d 134, 141, 118 P.3d 333 (2005) (quoting State v. Willis, 153 Wash.2d 366, 372, 103 P.3d 1213 (2005) (citing Johnson, 94 Wash.App. at 895, 974 P.2d 855)).
¶ 34 Since adopting our nexus inquiry some have lost sight of the purpose of the inquiry: to determine whether a criminal is "armed" during the commission of a crime. To restore the term "armed" to its ordinary meaning a nexus exists only when a criminal's actual possession and possible use of a firearm creates a real danger of injury or death to a victim, bystander, or police officer. This definition of the required nexus also avoids infringing on the absolute right to keep and bear arms under article I, section 24 of the Washington Constitution. See, e.g., Schelin, 147 Wash.2d at 587-93, 55 P.3d 632 (Sanders, J., dissenting). As such, the deadly weapon enhancement is inapplicable absent actual possession and possible use of a deadly weapon to facilitate commission of a crime, causing a real danger of injury or death during its commission.
¶ 35 Here, the record indicates Mickey Brown or his accomplice contemplated stealing an unloaded firearm, as one of them moved it from a closet to a bed in a bedroom of a two-story house. There the firearm remained throughout the commission of the crime. For only the briefest of moments did Brown or his accomplice actually possess the firearm, and only then for stealing it  never for using it. At no time did Brown or his accomplice use the firearm to assist the criminal act or place any victim, bystander, or police officer in actual danger of injury or death.
¶ 36 The dissent would have us infer from the simple touching of a firearm during the commission of the crime that the firearm was used to facilitate the crime. Under this reasoning a burglar becomes "armed" when rifling through the silver drawer he touches a carving knife. However, we have stated, "[i]f an assault with a beer bottle occurs in a kitchen, a defendant is not necessarily *253 `armed' with a deadly weapon because knives are kept in the kitchen." Schelin, 147 Wash.2d at 570, 55 P.3d 632. Similarly a burglar is not "armed" simply because he could have stolen a firearm. This is the absurd result avoided by the majority opinion to which the dissent's opinion inexorably leads.
¶ 37 I concur.
WE CONCUR: Justice JAMES M. JOHNSON.
MADSEN, J. (dissenting).
¶ 38 According to the majority, a person who brings a gun to a burglary is armed with a firearm during the commission of the burglary. But, a person who steals or attempts to steal a gun during the burglary is not armed during the commission of the burglary. Because this is an absurd result, I dissent.
¶ 39 In a series of cases this court has held that the State must present evidence of a nexus of the defendant, the weapon, and the crime to sustain a firearm enhancement. Although there is ample evidence of nexus in this case when all reasonable inferences are viewed in favor of the State, the majority adds a new condition to the nexus requirement, holding that it is not satisfied unless there is evidence that the defendant intended to or was willing to use the weapon in furtherance of the offense. This condition cannot be reconciled with legislative intent or with our prior cases, none of which set forth such a requirement. This new condition, which has been rejected by nearly every court that has considered the issue, will make it virtually impossible to prove a defendant was armed in many cases where the legislature's enactments and our existing case law would demand such a finding.
¶ 40 Applying its new rule here, the majority reverses both the first degree burglary conviction and the fire arm enhancement, even though the trial court found the defendant broke into a stranger's home, ransacked the victim's bedroom, took the victim's AK 47 rifle out of the victim's closet, and placed it on the victim's bed in preparation for its theft and complained later that the guns would have brought a good price had the defendant and his partner not been interrupted in their burglary.
¶ 41 The majority opinion fails to follow our case law, fails to draw all inferences in favor of the State, and reaches a result that ignores the statutes. I dissent.

ANALYSIS
¶ 42 Mickey Brown was charged with first degree burglary based on the fact that he or another participant in the crime was armed with a deadly weapon, a firearm, i.e., the AK 47 rifle found on the bed in the victim's home. He was tried in a bench trial, at the close of which the trial court found him guilty of first degree burglary. The court also imposed a firearm sentence enhancement.
¶ 43 The majority concludes that there is insufficient evidence of a nexus of the defendant, the weapon, and the crime, and accordingly the determination that Mr. Brown was armed was incorrect and his burglary conviction and the firearm enhancement must be reversed. There is ample evidence of the required nexus, contrary to the majority's view.
¶ 44 A defendant is armed with a deadly weapon if it is easily accessible and readily available for use for either offensive or defensive purposes. State v. Barnes, 153 Wash.2d 378, 383, ¶ 15, 103 P.3d 1219 (2005); State v. Gurske, 155 Wash.2d 134, 137, ¶ 8, 118 P.3d 333 (2005); State v. Valdobinos, 122 Wash.2d 270, 282, 858 P.2d 199 (1993). There must be a nexus between the defendant, the crime, and the weapon. Gurske, 155 Wash.2d at 140-41, ¶ 15, 142, ¶ 19, 118 P.3d 333; State v. Schelin, 147 Wash.2d 562, 567-70, 575, 55 P.3d 632 (2002). However, the word "nexus" need not be included in jury instructions as long as the instructions convey that requirement. State v. Willis, 153 Wash.2d 366, 374, ¶ 23, 103 P.3d 1213 (2005). A challenge to the sufficiency of the evidence requires viewing the evidence in the light most favorable to the State, with all reasonable inferences drawn in favor of the State. State v. Hosier, 157 Wash.2d 1, 8, ¶ 9, 133 P.3d 936 (2006).
¶ 45 Viewing the inferences most favorably to the State as is required, there is sufficient *254 evidence to establish a nexus of the defendant, the weapon, and the crime. Craig Ambacher testified that he kept his AK 47 rifle in the closet and he was certain that it was in the closet when he left the house the morning of the burglary. When he interrupted the burglary, he found the rifle, along with a gun clip, on the bed in the master bedroom a short distance from the closet. He also found things in disarray in the master bedroom because it had been ransacked. Verbatim Report of Proceedings (VRP) at 19-21, 32 (Feb. 11, 12 & June 5, 2002). Likewise, the responding deputy sheriff testified that there was a rifle on the bed in the master bedroom. VRP at 43. Ambacher also testified that videocassette recorders normally stored under the bed were pulled out and things that had been in the nightstand next to the bed had been emptied out and rifled. VRP at 25. He testified that the burglars collected items throughout the house and placed them for ready removal from the house. E.g., VRP at 22-26. There was ample evidence that Brown was one of the burglars. In addition, a witness who was with Brown and his accomplice after the burglary heard one of them say the guns were nice and wished they could have gotten them, and testified that she heard Brown say that he thought he could have obtained a lot of money for them.
¶ 46 These facts support the inference that either Brown or his accomplice removed the rifle from the closet and placed it on the bed,[1] thus establishing the nexus between the defendant and the weapon. These facts also show a connection between the weapon and the crime, because during the course of committing the crime of burglary one of the defendants had the rifle in hand and could have used it for offensive or defensive purposes, for example, if they had been interrupted by the homeowner or a law enforcement officer while they were still in the house committing the crime of burglary. See, e.g., State v. Merritt, 247 N.J.Super. 425, 431, 589 A.2d 648 (App.Div.1991) (where the perpetrators of a burglary handled weapons as they were removing them, the "weapons would have been readily available for the burglars to use if the victim or the police had interrupted them while they were committing the offense"). The facts also support the inference that the two intended to steal the rifle and sell it because it would have been profitable to do so, further establishing a link between the defendant and the weapon, as well as establishing, along with other evidence showing that Brown and Lenny Brown were the burglars, a connection between the defendant and the crime.
¶ 47 It makes no difference that the gun did not belong to either defendant and was not actually used during the burglary, in preparation for the burglary, or in flight from the burglary. The first degree burglary statute provides in part that an individual is guilty of first degree burglary "if, with intent to commit a crime . . . therein, he or she enters or remains unlawfully in a building and if . . . while in the building . . . the actor or another participant in the crime . . . is armed with a deadly weapon." RCW 9A.52.020(1). The statute does not require that a defendant own or bring the weapon into the building, nor does it require that he or she actually use a deadly weapon during the commission of the crime of burglary to be armed. Rather, "where the weapon is not actually used in the commission of the crime, it must be there to be used." Gurske, 155 *255 Wash.2d at 138, ¶ 11, 118 P.3d 333 (emphasis added).
¶ 48 Depending upon the circumstances, a weapon that is obtained during the course of a burglary may be easily accessible and readily available for use regardless of whether the weapon belongs to the defendant or is a weapon stolen during a burglary. During a burglary "`[a] gun can be used . . . for the purpose of frightening, intimidating or controlling people.'" State v. Speece, 56 Wash. App. 412, 417, 783 P.2d 1108 (1989) (quoting State v. Faille, 53 Wash.App. 111, 115, 766 P.2d 478 (1988)).
¶ 49 Viewing the inferences from the facts most favorably to the State, the evidence is sufficient to show that the rifle was easily accessible and readily available for use for either offensive or defensive purposes during the course of Brown's commission of the crime of burglary, and was clearly sufficient to show the required connection between Brown, the rifle, and the offense of burglary. As the trial court concluded, "the gun lying on the bed would make the gun readily accessible to those who were in the process of ransacking this [master bed]room looking for bounty." VRP at 196 (Feb. 12, 2002). The majority erroneously concludes there is insufficient evidence of a nexus, or connection, between the defendant or an accomplice, the weapon, and the crime. The evidence belies the majority's startling statement that in this case the defendant or his accomplice "merely touched a weapon." Majority at ___, 173 P.3d at 250; see also majority at ___, 173 P.3d at 251-52 n. 5.
¶ 50 The concurrence also misrepresents my analysis, saying that it means that a "nexus exists whenever the criminal so much as touches a firearm during the commission of a crime." Concurrence at ___, 173 P.3d at 252. The concurrence also apparently believes that mere theft of a weapon would satisfy the nexus requirement, again misrepresenting this opinion.
¶ 51 Not so. It is not the mere fact of theft of a firearm that suffices to satisfy the nexus requirement, nor the mere touching of a weapon. Here, the evidence shows that the burglars were interrupted when the homeowner returned home, highlighting the potential for violence that exists when a firearm is taken during a burglary of a residence.
¶ 52 The concurrence also undercuts its own misstatements regarding the purpose of the deadly weapons enhancement by quoting State v. Johnson 94 Wash.App. 882, 896, 974 P.2d 855 (1999), where the Court of Appeals noted that the enhancement is aimed at preventing the potential for violence that is more dangerous to the victim, bystanders, or police if the defendant is armed while committing the crime.
¶ 53 When a burglar takes a weapon, it is that much easier for the burglar to get away with the crime, and that much easier for the crime to escalate. It is not actual violence alone that the legislature perceived as necessitating the statutes' enhancing penalties or degrees of offenses when the defendant is armed, it is also the potential for violence.
¶ 54 The majority concludes, however, that there is no evidence of the defendant's intent or willingness to use the rifle in furtherance of the crime. Majority at ___, 173 P.3d at 249. But in doing so, the majority adds a condition to the nexus requirement that does not appear in any of this court's prior cases.
¶ 55 Evidence of willingness to use a firearm as a deadly weapon is not required for purposes of first degree burglary. State v. Hall, 46 Wash.App. 689, 695, 732 P.2d 524 (1987); accord Speece, 56 Wash.App. at 418, 783 P.2d 1108. "Possession of a deadly weapon tends to escalate the possibility of violence by anyone discovering a burglary in progress." Faille, 53 Wash.App. at 115, 766 P.2d 478. Evidence of intent to use the weapon or of willingness to use it is also not required to satisfy the "nexus" requirement, as it has been adopted by this court. None of our cases require proof of intent to use a firearm or evidence of willingness to do so in furtherance of the crime.
¶ 56 The requirement also does not accord with legislative intent. The burglary and sentence enhancement statutes are not directed solely at people who actually use or intend to use deadly weapons to commit their crime or who exhibit willingness to do so. The legislature intended "to punish those *256 who are armed during the commission of a crime more severely than those who are unarmed because the risk of serious harm to others is greater." Gurske, 155 Wash.2d at 138, ¶ 11, 118 P.3d 333 (emphasis added). When enacting the Hard Time for Armed Crime Act of 1995 (Initiative 159), the legislature recognized that armed criminals pose a threat to public safety and "can turn any crime into serious injury or death." Laws of 1995, ch. 129, § 1(1)(a) (Initiative Measure No. 159). The legislature intended to deter armed crime, protect victims from armed crime, and protect the police. See Gurske, 155 Wash.2d at 139, ¶ 12, 118 P.3d 333. "The legislature has expressly recognized that armed individuals engaged in criminal conduct might use a deadly weapon for `several key reasons including: Forcing the victim to comply with their demands; injuring or killing anyone who tries to stop the criminal acts; and aiding the criminal in escaping.'" Id. (quoting Laws of 1995, ch. 129, § 1(1)(b) (Initiative Measure No. 159)).
¶ 57 The legislature's goals are implicated whether the defendant actually intended to use the weapon or was willing to do so. The majority has improperly added a requirement that the statutes do not contain and that is unnecessary to meet legislative goals. And in claiming that our prior cases in fact demonstrate such a requirement the majority misstates the analyses in the cases it cites. In neither State v. Eckenrode, 159 Wash.2d 488, 494, 150 P.3d 1116 (2007), nor Schelin, 147 Wash.2d at 574, 55 P.3d 632, did the court say that there must be evidence that the defendant actually intended to use the weapon or was willing to do so. That was never an issue. Instead, in both cases at the cited pages, the court was addressing the question whether there was sufficient evidence of a connection between the weapon and the crime.
¶ 58 The majority also reasons that the rifle was merely valuable property. Majority at ___, 173 P.3d at 249. Legislative goals are implicated whether the defendant brings the weapon to the scene of the crime or steals it and thereby has it available for use during the course of a burglary. See, e.g., Williams v. State, 517 So.2d 681, 682 (Fla. 1988) (purpose of mandatory minimum sentence is "to discourage the possession of a firearm at any time during the course of a criminal endeavor;" sentence properly imposed where the defendant possessed firearms stolen during the course of a burglary); State v. Herbert, 601 N.W.2d 210 (Minn.Ct. App.1999) (for purposes of sentence enhancement, a person who arms himself with a firearm stolen during a burglary is armed at the time of the offense; the danger the sentence enhancement statute seeks to address, increased risk of violence, arises not only when a burglar carries a firearm onto the premises, but also when a firearm is obtained during the course of the offense); Creasy v. Commonwealth, 9 Va.App. 470, 473, 389 S.E.2d 316 (1990) (mandatory minimum sentence based on the use or display of a weapon in committing a felony was properly imposed where the defendant was convicted of use of a firearm in the commission of a burglary firearm stolen during burglary; the purpose of the sentence is to deter violent criminal conduct and "the danger and risk of violent criminal conduct persists until the crime is completed in fact").[2]
¶ 59 In several cases the Court of Appeals has affirmed determinations that a defendant who stole or attempted to take a weapon during a burglary was armed. See, e.g., *257 Hall, 46 Wash.App. 689, 732 P.2d 524; Speece, 56 Wash.App. 412, 783 P.2d 1108; Faille, 53 Wash.App. 111, 766 P.2d 478. In these cases the court's focus appropriately has been on whether the weapon was easily accessible and readily available for offensive or defensive use, not on whether the weapon was an object of the burglary.
¶ 60 It makes no difference that the defendant here did not actually take the weapon. Whether Brown failed to complete the theft because he was interrupted by the victim's return does not mean that Brown was not armed. The evidence shows that Brown or his accomplice took the rifle from the closet, placed it on the bed, and intended to take it with them. The witness's testimony describing their wish that they could have gotten the weapon, and her testimony that she heard Brown say that he thought he could have obtained a lot of money for the weapon shows they wanted to take the rifle with them but were thwarted when the victim interrupted the course of the burglary. The fact they left a pistol under the bed where it was stored either means they did not notice it or that they did not intend to take it, unlike the rifle. It certainly does not mean, as the majority reasons, majority at ___, 173 P.3d at 250, that their actions with respect to the rifle did not implicate the legislature's concerns.[3]
¶ 61 More importantly, the relevant inquiry is whether Brown was armed, not whether he actually took the weapon. The evidence shows that Brown was armed.
¶ 62 The majority's analysis departs from our prior cases on the law, conflicts with the statutes and their underlying legislative goals, and utterly fails to give effect to the basic principle that evidence and the inferences from the evidence are viewed most favorably to the State.
¶ 63 The majority is also out of step with the overwhelming majority of courts considering the issue, which have held that a defendant is armed if he or she enters a building unarmed and then acquires a firearm as "loot." See, e.g., Pardue v. State, 571 So.2d 333 (Ala.1990) (a burglar is armed with a deadly weapon where he acquires a gun as loot during the burglary); Wesolic v. State, 837 P.2d 130 (Alaska Ct.App.1992) (individual who broke into locked rooms and stole several firearms committed burglary while armed with a firearm); People v. Loomis, 857 P.2d 478 (Colo.Ct.App.1992) (a defendant who steals a weapon during the course of a burglary may be found to have been armed if he or she had immediate access to the weapon during the offense); Hardee v. State, 534 So.2d 706 (Fla.1988) (defendant who steals a firearm during a burglary may be convicted of armed burglary); Meadows v. Commonwealth, 551 S.W.2d 253 (Ky.Ct.App.1977) (defendant who broke into a residence and stole a firearm was armed with a deadly weapon, and therefore was guilty of first degree burglary); Hayes v. Commonwealth, 698 S.W.2d 827 (Ky.1985) (a defendant who enters a building unarmed and steals a firearm becomes *258 armed with a deadly weapon); State v. Crews, 968 S.W.2d 763 (Mo.Ct.App.1998) (a defendant is armed if he equips himself with a firearm for the purpose of stealing it); Merritt, 247 N.J.Super. at 430-31, 589 A.2d 648 (the term "armed" connotes not only possession but also immediate access to a weapon; under this definition, a person may become armed with a weapon obtained in a burglary; "[o]nce obtained during the course of the offense, a weapon may be as readily accessible to the perpetrator as if he had brought it to the scene initially"); State v. Luna, 99 N.M. 76, 653 P.2d 1222 (1982) (a person who becomes armed with a firearm taken as loot during a burglary may be convicted of burglary while armed with a deadly weapon); State v. McCaskill, 321 S.C. 283, 285-86, 468 S.E.2d 81 (Ct.App.1996) (one is armed for purposes of first degree burglary if a firearm is easily accessible and readily available for offensive or defensive purposes; where defendant and other participants committed a residential burglary and the evidence supported the inference that at some time during the course of the burglary one of them took possession and control over a firearm, "the weapon was just as available to the burglar for offensive or defensive use as if the burglar had himself brought the weapon to the burglary for the purpose of committing the crime;" defendant was armed for purposes of first-degree burglary); Britt v. State, 734 P.2d 980 (Wyo.1987) (the defendant became armed with a deadly weapon where, during the course of a burglary, he and others stole firearms; defendant was properly convicted of aggravated burglary); see also Montana v. Ray, 2003 MT 171, 316 Mont. 354, 71 P.3d 1247 (a defendant is armed with a weapon when he or she steals a loaded weapon during the course of a burglary); cf. State v. Padilla, 122 N.M. 92, 920 P.2d 1046 (Ct.App.1996) (a defendant arms himself with a deadly weapon when he steals a knife during a burglary but does not threaten to use or use the knife); but see State v. Befford, 148 Ariz. 508, 715 P.2d 761 (1986) (prosecution must show that the defendant had the willingness or present ability to use the weapon).[4]
¶ 64 Many of these courts correctly reason that the risks of potential violence "are as fully present when the burglar steals a firearm from within the building as when the burglar arrives already armed." Wesolic, 837 P.2d at 133; see also Loomis, 857 P.2d at 481 (even if a burglar did not intend to use the weapon, its use might follow if he or she is confronted by the police, the property owner, or a bystander; thus, the potential for danger may be escalated when the burglar becomes armed with a deadly weapon); Meadows, 551 S.W.2d at 256 ("[c]ertainly the possession of a deadly weapon inside a dwelling or any other building during the course of a burglary or while fleeing therefrom is `indicative of . . . potential dangerousness'" (alteration in original)); Britt, 734 P.2d at 982 (possession of a firearm inside a building or while fleeing from a building "certainly tends to escalate a dangerous situation").
¶ 65 Finally, a defendant does not have to be armed at the time of the arrest to be found to have been armed during the commission of the offense. State v. O'Neal 159 Wash.2d 500, 504, 150 P.3d 1121 (2007).[5] The State does not have to establish with mathematical precision the specific time and place that a firearm was readily available and easily accessible, provided that it was at the time the crime was committed. Id. Accordingly, just because a defendant is not found at the scene of the crime with the weapon is not a ground to conclude the defendant was not armed at the time the crime was committed.

*259 CONCLUSION
¶ 66 The evidence is clearly sufficient to support the trial court's finding and conclusion that Brown was "armed" for purposes of first degree burglary and the sentence enhancement. In reaching a contrary conclusion, the majority completely fails to consider the evidence in the light most favorable to the State as is required.
¶ 67 Even more alarming, the majority also requires evidence that the defendant intended or was willing to use the weapon in furtherance of the crime. Under our cases this has never been a condition that must be satisfied for the defendant to be found armed at the time of commission of a crime. The majority's sub silentio overruling of our prior cases addressing the nexus requirement will make it virtually impossible to prove a defendant was armed in too many cases to contemplate. The majority's analysis is absolutely irreconcilable with the people's initiative to the legislature that the legislature enacted as the Hard Time for Armed Crime Act.
¶ 68 I dissent.
WE CONCUR: Justice SUSAN OWENS, Justice MARY E. FAIRHURST and Justice BOBBE J. BRIDGE.
NOTES
[1] Former RCW 9A.72.110(1)(a) (1994) provided in part that "[a] person is guilty of intimidating a witness if a person directs a threat to a former witness because of the witness' testimony in any official proceeding, or if, by use of a threat directed to a current witness or a person he or she has reason to believe is about to be called as a witness in any official proceeding . . . he . . . attempts to . . . [i]nfluence the testimony of that person." (Emphasis added.) The statute was amended in 1997 to its current version. Laws of 1997, ch. 29, § 1.

As originally enacted, the statute criminalized only threats directed to a person the defendant had reason to believe was about to be called as a witness in an official proceeding. Laws of 1975, 1st Ex.Sess., ch. 260, § 9A.72.110. It was amended in 1982 to include threats made to one whom the defendant has reason to believe may have information relevant to a criminal investigation. Laws of 1982, 1st Ex.Sess., ch. 47, § 18. In 1985, it was amended to include threats to former witnesses. Laws of 1985, ch. 327, § 2.
[2] The legislature cited several "key reasons" for sentencing armed individuals more harshly, including, "[f]orcing the victim to comply with their demands; injuring or killing anyone who tries to stop the criminal acts; and aiding the criminal in escaping." Laws of 1995, ch. 129, § 1(1)(b) (Initiative Measure No. 159).
[3] Similarly, in State v. Simonson, the defendant kept seven guns, including shotguns and an assault rifle, in a trailer he lived in while producing methamphetamine. At least four of the weapons were loaded. The court concluded that a reasonable inference for keeping so many loaded weapons was that the defendant had the weapons "to defend the manufacturing site in case it was attacked." 91 Wash.App. 874, 883, 960 P.2d 955 (1998).
[4] The dissent cites a New Jersey Superior Court decision for the proposition that a nexus between the gun and crime is shown if the weapon could have been used for offensive or defensive purposes. Dissent at 5 (citing State v. Merritt, 247 N.J.Super. 425, 431, 589 A.2d 648 (App.Div. 1991)). In Merritt, the court found that "the majority of courts . . . have held that person who steals a weapon may be found to have been armed, without showing that he actually used or intended to use the weapon, so long as he had immediate access to the weapon during the offense." 247 N.J.Super. at 430-31, 589 A.2d 648. Merritt is inapposite because it did not involve application of a nexus requirement.

The dissent also argues that the majority of courts hold that a defendant is armed if he or she enters a building unarmed and then acquires a firearm as loot. Dissent at ___ _ ___, 173 P.3d at 257-58. These cases are also not on point. None involves a defendant who is both charged with a deadly weapon sentence enhancement as well as first degree burglary. This means that none of those decisions involved the application of a nexus requirement between the gun and the crime. Hence, they do not support the view that possession of a firearm alone during an ongoing crime establishes the nexus between the gun and the crime. Furthermore, several of these cases rely on State v. Hall, 46 Wash.App. 689, 732 P.2d 524 (1987) or State v. Faille, 53 Wash.App. 111, 766 P.2d 478 (1988). See Wesolic v. State, 837 P.2d 130 (Alaska Ct.App.1992); State v. McCaskill, 321 S.C. 283, 468 S.E.2d 81 (1996); State v. Loomis, 857 P.2d 478, 482-83 (Colo.Ct.App. 1992); State v. Ray, 2003 MT 171, 316 Mont. 354, 71 P.3d 1247. For the reasons noted above, Faille and Hall are not determinative here because in those cases weapons were removed from the homes.
[5] The dissent argues that "[l]egislative goals are implicated whether the defendant brings the weapon to the scene or steals it." Dissent at ___, 173 P.3d at 256 (citing Williams v. State, 517 So.2d 681, 682 (Fla.1988); State v. Herbert, 601 N.W.2d 210 (Minn.Ct.App.1999); Creasy v. Commonwealth, 9 Va.App. 470, 473, 389 S.E.2d 316 (1990)). In Williams, the defendant was discovered while burglarizing a pawn shop. He had loaded weapons at his feet and an unloaded pistol "on his person." In Herbert, the defendant admitted to burglary and theft of several guns. In Creasy, the defendant shot and killed the resident during a burglary. The facts in these three cases differ in varying degrees from those in this case, as do the statutory frameworks supporting the crimes charged-none involve a weapons enhancement statute like Washington's. These cases are not convincing proof that the Washington legislature intended the weapons enhancement to apply to instances where a deadly weapon is merely touched during the course of a crime.
[1] Whether Brown or his accomplice moved the rifle and clip makes no difference. First, as to the firearm sentence enhancement, under former RCW 9.94A.510(3) (2000) (recodified at RCW 9.94A.533(3)), an enhanced sentence is required "if the offender or an accomplice was armed with a firearm." (Emphasis added.) As to the first degree burglary statute, RCW 9A.52.020(1), a person may be convicted of first degree burglary if "with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building and if, in entering or while in the building or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon." (Emphasis added.) Thus, although, as Mr. Brown points out, the evidence at trial does not establish whether he or his accomplice removed the rifle from the closet or which of them placed it on the bed, this does not matter. The evidence at trial supports the conclusion that Brown was a participant in the burglary and that during the course of the burglary either he or his accomplice moved the rifle from the closet and placed it on the bed.
[2] This risk of violence and escalating danger exists if the deadly weapon is an unloaded firearm. Whether a firearm is loaded or unloaded, it can be used to frighten, intimidate, and control others. Creasy, 9 Va.App. at 473, 389 S.E.2d 316. In addition, others may not know the weapon is unloaded, and in a volatile situation the property owner or a law enforcement officer may respond with deadly force to the perceived danger posed by an individual with a gun. The statutory definition of deadly weapon, which applies to the burglary statutes, includes an unloaded firearm. RCW 9A.04.110(6) ("[i]n this title unless a different meaning plainly is required . . . `Deadly Weapon' means any . . . loaded or unloaded firearm"). The same is true for purposes of determining whether an individual is armed for the purpose of sentence enhancements. The court noted in Schelin, 147 Wash.2d at 567 n. 2, 55 P.3d 632, that a firearm is considered a deadly weapon whether it is loaded or unloaded. See also, e.g., State v. Sullivan, 47 Wash.App. 81, 85, 733 P.2d 598 (1987) (an unloaded firearm is a deadly weapon per se); see 11 Washington Practice: Washington Pattern Jury Instructions: Criminal 2.07.02, at 46 (2d ed. Supp.2005).
[3] It also does not matter, contrary to Mr. Brown's argument, that the gun was not moved during the burglary to a centralized location generally accessible to the defendant where other stolen items were stored as well. He relies on Hall, 46 Wash.App. at 695-96, 732 P.2d 524, where the guns were removed from the house and placed in the defendant's trunk, and Faille, 53 Wash.App. at 112, 114-15, 766 P.2d 478, where guns removed from the house were stored in bushes outside the house. He says that here the rifle was merely removed from the closet and placed on the bed where it was no more accessible than it was in the closet. He adds that there was no evidence the rifle ever left the room where the homeowner kept it, it was in one bedroom of a two-story house, and there was no evidence that he or Lenny Brown spent a significant amount of time near the rifle.

The evidence shows that Brown or Lenny Brown placed the rifle on the bed in the course of committing the crime of burglary, establishing a reasonable inference that the weapon was easily accessible and readily available during commission of the crime. This is not a case, such as in Valdobinos, where there was no evidence that the rifle had been used or was readily available for use during the commission of a crime against a victim or other person. Gurske, 155 Wash.2d at 140, ¶ 13, 118 P.3d 333 (discussing Valdobinos). Rather, this case is more like Willis, where the court held that evidence that the defendant handled the weapon in the car on the way to commit a burglary and broke down the door of the residence to be burglarized, and that police found the weapon in the vehicle, was sufficient to establish that the defendant was armed in the commission of the crime. Willis, 153 Wash.2d at 368, ¶ 14, 375, ¶¶ 26-27, 103 P.3d 1213.
[4] Befford has been superseded by a statute clarifying the legislature's intent that "armed" means to "knowingly possess." See State v. Tabor, 184 Ariz. 119, 907 P.2d 505, 506 (Ct.App.1995).
[5] Many courts have held that whether the firearm is loaded or unloaded is immaterial either because there is a specific state statute that includes unloaded firearms within the definition of deadly weapon, as in this state, or because the particular court reasons that the risk of escalating danger and violence exists whether the firearm is loaded or unloaded. E.g., Loomis, 857 P.2d at 481-82; Hardee, 534 So.2d 706; Luna, 99 N.M. 76, 653 P.2d 1222; see also Crews, 968 S.W.2d 763 (because the legislature defined a deadly weapon as any firearm, whether loaded or unloaded, it is immaterial whether the defendant loaded the firearm or knew that it was loaded).