IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77963-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES RANDALL TURNER, SR., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: August 5, 2019 |
| | ) | |

VERELLEN, J. — Charles Turner, Sr. appeals his convictions for residential burglary with a deadly weapon and felony violation of a domestic violence no contact order with a deadly weapon. Turner contends the jury instructions allowed him to be convicted of an uncharged crime because of differences between the charging document and the jury instructions. But Turner fails to show the discrepancies added to the State's burden at trial or risked jury confusion.

He also takes issue with a jury instruction that he argues let him be convicted of committing residential burglary in his own home. But the jury instruction correctly stated the law, and Turner's factual argument relies on second guessing credibility determinations by the jury.

Turner contends absence of a unanimity instruction for an alternative means crime resulted in a nonunanimous conviction in violation of article I, section

22 of the Washington State Constitution. But this argument relies on case law disclaimed by our Supreme Court, and he fails to show the alternative means alleged lacked substantial evidence.

Turner also contests imposition of the deadly weapon sentencing enhancements because he contends the enhancement lacked substantial evidence. The record shows otherwise.

Finally, Turner argues and the State agrees that the court improperly imposed a criminal filing fee and a DNA[1] collection fee.

Therefore, we affirm Turner's conviction and remand so the invalid fees can be stricken.

## FACTS

Since December 2011, a domestic violence no-contact order has prohibited Turner, Lisa Turner's[2] husband of over 30 years, from contacting her or coming within 300 feet of her person or residence.[3] Lisa lived in a two-bedroom apartment with Gary White.[4] Only White's name was on the lease, although both of them paid rent and had their own bedrooms.[5]

---

[1] Deoxyribonucleic acid.

[2] Because both Lisa and Charles share a last name, we refer to Lisa by her first name for clarity.

[3] Ex. 26; Report of Proceedings (RP) (Oct. 17, 2017) at 269.

[4] Id. at 236.

[5] Id. at 236-39.

Turner had already been convicted twice of violating a no-contact order[6] when, in November of 2016, he moved in with Lisa.[7] On April 2, 2017, Lisa and Turner had a loud, drunken argument that turned violent.[8] The night ended with both of them bleeding, with Turner getting arrested, and with both of them being treated at hospitals for their injuries.[9]

The State charged Turner with second degree assault of Lisa, with committing residential burglary by entering and remaining "unlawfully in the dwelling of Lisa Turner, located at 15326 40th Ave. W. #2, Lynnwood," and with violating a no-contact order.[10] Each charge carried the potential of a deadly weapon enhancement for use of a knife.[11]

The jury found Turner not guilty of assault.[12] It found him guilty of burglary and violating the no contact order, both while armed with a deadly weapon.[13] Because Turner's criminal history qualified him as a persistent offender under RCW 9.94A.570, the court sentenced him to lifetime confinement without the

---

[6] RP (Oct. 19, 2017) at 419.

[7] RP (Oct. 17, 2017) at 237.

[8] Id. at 241-43, 245.

[9] Id. at 277-78, 292-94, 306-07; RP (Oct. 19, 2017) at 454-55.

[10] Clerk's Papers (CP) at 84-85.

[11] Id.

[12] CP at 35-36.

[13] CP at 37-38, 41-42.

possibility of parole.[14] The court also imposed a criminal filing fee and a DNA collection fee.[15]

Turner appeals.[16]

## ANALYSIS

Turner contends his conviction for residential burglary violated his due process rights. We review constitutional issues de novo.[17]

Turner argues the information failed to "give[ ] notice that he might be convicted of burglarizing . . . a particular residence (identified by address)."[18] But about one month before trial, the State filed an amended information accusing Turner of committing residential burglary:

> That the defendant, on or about the 2nd day of April, 2017, with intent to commit a crime against a person or property therein, did enter and remain unlawfully in the dwelling of Lisa Turner, located at 15326 40th Ave. W. #2, Lynnwood; proscribed by RCW 9A.52.025.[19]

Contrary to Turner's contention, the information clearly stated the address of the particular residence he was accused of burglarizing. Turner had notice.

---

[14] CP at 9, 11; RP (Dec. 28, 2017) at 17-18.

[15] CP at 13.

[16] We note Turner violated RAP 10.3(g) and RAP 10.4 by failing to identify and set out the jury instructions he alleges were erroneous. Because his procedural failing did not hinder the State's ability to identify the allegedly erroneous instructions and respond, Resp't's Br. at 7, 11, 14, we will consider his arguments only as to those instructions identified by the State. RAP 1.2(a), (c).

[17] State v. Armstrong, 188 Wn.2d 333, 339, 394 P.3d 373 (2017).

[18] Reply Br. at 4.

[19] CP at 84-85.

4

Turner argues that because the information charged him with remaining "in the dwelling of Lisa Turner" but the jury instructions did not so specify, the jury could have convicted him of the uncharged crime of burglarizing White's residence.[20] The State argues it had no burden to prove and the jury had no need to find that the dwelling was Lisa's because the phrase "of Lisa Turner" was surplus and nonessential.[21]

Article I, section 22 of the Washington State Constitution prohibits trying an accused for uncharged offenses.[22] Accordingly, an information "must state all the essential statutory and nonstatutory elements of the crimes charged."[23] But "surplus language in a charging document may be disregarded" at trial and left unproven unless the jury instructions repeated the surplus language.[24] Because the jury instructions do not repeat the allegedly surplus language,[25] the question is whether the phrase "of Lisa Turner" was required to correctly state the elements of residential burglary.

---

[20] See Appellant's Br. at 11, 15 ("The evidence presented at trial raised a factual question of whether the apartment [in the information] was indeed Lisa's dwelling at the time of the incident. The instructions did not inform the jury that in order to convict [Turner,] it had to resolve this question and find beyond a reasonable doubt that the apartment was in fact Lisa's dwelling at the time of the incident.").

[21] Resp't's Br. at 7-8.

[22] State v. Pelkey, 109 Wn.2d 484, 487, 745 P.2d 854 (1987).

[23] State v. Tvedt, 153 Wn.2d 705, 718, 107 P.3d 728 (2005) (citing U.S. CONST. amend. 6; WASH. CONST. art. I, § 22; CrR 2.1(a)(1); State v. McCarty, 140 Wn.2d 420, 424-25, 998 P.2d 296 (2000)).

[24] Tvedt, 153 Wn.2d at 718.

[25] CP at 60.

Under RCW 9A.52.025(1), "[a] person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle." A person "enters or remains unlawfully" when he "is not licensed, invited, or otherwise privileged to so enter or remain."[26] RCW 9A.52.025(1) does not require naming the owner of the dwelling allegedly burglarized. The information accurately identified the address of the dwelling in question, making the phrase "of Lisa Turner" superfluous. Thus, the phrase was mere surplus in the information and did not need to be proved at trial. Turner fails to show harm to his due process rights.

Turner contends the court improperly instructed the jury and let him be convicted of burglary for remaining in his own home.[27] We review jury instructions de novo for legal errors.[28]

Jury instruction 16 defined the phrase "enters or remains unlawfully" for purposes of residential burglary:

> A person enters or remains unlawfully in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain.
>
> . . . .
>
> A person who is prohibited by court order from entering a premises cannot be licensed, invited, or otherwise privileged to so enter or remain on the premises by an occupant of the premises.[29]

---

[26] RCW 9A.52.010(2).

[27] Appellant's Br. at 16-19.

[28] State v. Dreewes, 192 Wn.2d 812, 819, 432 P.3d 795 (2019).

[29] CP at 62.

An accused person can be guilty of burglarizing his own property, including when the accused enters a property in violation of a no contact order.[30] Even if the person protected by the no contact order authorizes entry, that permission "cannot override a court order excluding a person from the residence."[31] The jury instruction properly stated the law.

Because the no-contact order here prohibits Turner from contacting Lisa and from coming within 300 feet of her residence,[32] Turner's argument turns on whether Lisa occupied the residence. Turner testified he rented a bedroom in the residence, and Lisa did not live there at the time.[33] Lisa and White both testified she occupied the residence and lived there before Turner, but she allowed Turner to move in with her despite the no-contact order.[34] Had the jury believed Turner's testimony, then he could not have been found guilty because his presence in his own home could not have been made unauthorized by Lisa showing up.[35] But

---

[30] State v. Sanchez, 166 Wn. App. 304, 308, 271 P.3d 264 (2012).

[31] Id. at 310. Turner relies on State v. Wilson, 136 Wn. App. 596, 150 P.3d 144 (2007), to argue an accused person subject to a no contact order cannot be guilty of violating that order and committing burglary when the protected person visits the accused at home. App. Br. at 16-17. But Wilson is only applicable where, unlike here, a no contact order prohibits contact only with the person and does not limit contact with a person's residence. Wilson, 136 Wn. App. at 612.

[32] Ex. 26.

[33] RP (Oct. 19, 2017) at 446, 447, 459.

[34] RP (Oct. 17, 2017) at 237-40, 270-72.

[35] See Wilson, 136 Wn. App. at 612 (holding "as a matter of law that Wilson could not have burglarized the 1123 East Park residen[ce] by entering and remaining unlawfully because it was his residence and neither a court order nor Sanders had lawfully excluded him from it.").

7

because the jury found Turner guilty of residential burglary, it must have weighed the conflicting testimony and found Lisa and White more credible than Turner.

"We must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence."[36] Credibility determinations are not reviewable on appeal.[37] Thus, we decline to second guess the jury's necessary conclusion that Turner was in Lisa's residence.

Turner argues his right to a unanimous verdict was violated because the court did not give a unanimity instruction for the alternative means crime of violating a no contact order.[38] But this instruction, while generally preferable, is not always required.[39]

Article I, section 21 of our state constitution provides criminal defendants the right to a unanimous jury verdict. "But in alternative means cases, where substantial evidence supports both alternative means submitted to the jury, unanimity as to the means is not required."[40] Only when one of the means

---

[36] Id. at 604 (citing State v. Walton, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992)).

[37] Id. (citing State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990)).

[38] Appellant's Br. at 20. Felony violation of a no-contact order is an alternative means crime. See State v. Joseph, 3 Wn. App.2d 365, 369-70, 416 P.3d 738 (2018) (analyzing felony violation of a no-contact order as an alternative means crime).

[39] Armstrong, 188 Wn.2d at 344. Turner relies on State v. Owens, 180 Wn.2d 90, 95, 323 P.3d 1030 (2014), to argue the right to a unanimous jury verdict extends to the means by which a crime was committed. Appellant's Br. at 20-21. But the Supreme Court expressly rejected both this argument and the statement in Owens used to support it. Armstrong, 188 Wn.2d at 342, 342 n.4.

[40] Armstrong, 188 Wn.2d at 340 (citing State v. Sandholm, 184 Wn.2d 726, 732, 364 P.3d 87 (2015); State v. Ortega-Martinez, 124 Wn.2d 702, 705, 881 P.2d

charged to the jury lacks sufficient evidence is "a 'particularized expression' of jury unanimity required."[41]

The issue is whether substantial evidence supported both alternative means by which the jury could convict Turner for felony violation of a no contact order. Evidence is sufficient if it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt when viewed in a light most favorable to the State.[42] A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn from it.[43]

To convict Turner, the State had to prove that "(a) [Turner's] conduct was reckless and created a substantial risk of serious physical injury to another person or (b) [Turner] has twice been previously convicted for violating the provisions of a court order."[44]

The State proved alternative (b) because Turner stipulated to having been previously convicted twice for violating a court order.[45] And the State presented substantial evidence for alternative (a). White and Lisa both testified that Turner

---

231 (1994); State v. Whitney, 108 Wn.2d 506, 508, 739 P.2d 1150 (1987); State v. Franco, 96 Wn.2d 816, 823, 639 P.2d 1320 (1982)).

[41] State v. Woodlyn, 188 Wn.2d 157, 165, 392 P.3d 1062 (2017).

[42] Armstrong, 188 Wn.2d at 341 (quoting Ortega-Martinez, 124 Wn.2d at 708).

[43] Wilson, 136 Wn. App. at 604 (quoting State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 99 (1980)).

[44] CP at 65. The State also had to prove that Turner was subject to a no contact order on April 2, 2017; that he knew of the existence of the order; that he knowingly violated the order on April 2, 2017; and that these events occurred in Washington. Id. Turner does not contest whether the State proved these.

[45] RP (Oct. 19, 2017) at 419.

pulled Lisa's head back and held a knife to her neck.[46] The police officers who investigated found blood on the knife Turner held to Lisa's neck.[47] Lisa testified she bled "a lot of blood" after Turner cut her with the knife.[48] The emergency room doctor who saw Lisa said she had a laceration just beneath the bottom corner of her left jaw and "had a fair amount of blood on her, particularly [her] neck and over the shirt."[49] He also testified the laceration Lisa received "absolutely" could be dangerous.[50] The emergency room worker who treated Lisa testified the wound required seven stitches to close.[51] Lisa also told the EMTs who responded to the 911 call that she had been "stabbed by her husband."[52] Based on this testimony, a rational juror could certainly infer that Turner acted recklessly and created a substantial risk of serious harm to Lisa.

Turner contends the jury rejected this evidence because it found him not guilty of second degree assault.[53] But the jury's rejection of second degree assault does not prove Turner acted safely or negate the evidence presented at trial. Conduct can be reckless and create a substantial risk of serious harm without constituting intentional second degree assault. Because substantial evidence viewed in a light most favorable to the State supports both alternative

---

[46] RP (Oct. 17, 2017) at 245, 277, 279.

[47] Id. at 197, 202, 236.

[48] Id. at 277.

[49] Id. at 294-95.

[50] Id. at 295.

[51] RP (Oct. 19, 2017) at 410-11, 418.

[52] Id. at 415.

means presented to the jury, Turner's right to a unanimous jury verdict was not violated.

Turner argues jury findings on the deadly weapon enhancement were unsupported because the evidence did not show a nexus between his crimes and the knife.[54]

A person is armed with a deadly weapon if it is easily accessible and ready for use.[55] But mere possession is insufficient because there must be a nexus between the defendant, the crime, and the weapon.[56] We analyze the nature of the crime, the type of weapon, and the circumstances to ascertain whether a nexus exists.[57] Where "the facts and circumstances support an inference of a connection . . . sufficient evidence exists."[58]

Here, Turner obtained the knife only because he knowingly violated the no contact order and remained in the residence without authorization.[59] And he held the knife up to Lisa's neck after she told him to leave.[60] This shows a nexus between Turner's crimes, the circumstances, and possession of the knife.

---

[53] Appellant's Br. at 26.

[54] Id. at 24, 27.

[55] State v. Brown, 162 Wn.2d 422, 431, 173 P.3d 245 (2007) (citing State v. Easterlin, 159 Wn.2d 203, 208-09, 149 P.3d 366, 370 (2006)).

[56] Id.

[57] Id. (citing State v. Schelin, 147 Wn.2d 562, 570, 55 P.3d 632 (2002)).

[58] Easterlin, 159 Wn.2d at 210.

[59] Ex. 26; RP (Oct. 17, 2017) at 276-77.

[60] RP (Oct. 17, 2017) at 243, 276-77.

As a final matter, the State concedes both the criminal filing fee and DNA collection fee should be stricken.[61]

Therefore, we affirm Turner's conviction and remand so the invalid fees may be stricken.

WE CONCUR:

---

[61] Resp't's Br. at 18-19.