**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**APRIL 20, 2023**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38822-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEVEN DAVID STOTTS, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Steven Stotts appeals his convictions for second degree identity theft and forgery. On appeal, he argues that the evidence was insufficient to support his convictions, and the prosecutor committed misconduct in closing arguments. During trial, the prosecutor introduced evidence of the "*Brady*"[1] list and then argued in closing that the officer would not risk his career by testifying untruthfully. The prosecutor also raised the issue of a missing witness for the first time in closing, suggesting that if Stotts' cousin, Josh, actually corroborated Stotts' testimony, he would have come forward and

---

[1] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). *Brady* held that the prosecution has a duty to turn over all exculpatory evidence in its possession. After *Brady*, prosecutors began maintaining *Brady* lists to identify law enforcement officers with potential impeachment evidence that must be disclosed to the defense. *See, e.g.*, Mary Ellen Reimund, *Are Brady Lists (aka Liar's Lists) the Scarlet Letter for Law Enforcement Officers? A Need for Expansion and Uniformity*, 3 INT'L J. HUMANS. & SOC. SCI. 1 (Sept. 2013).

No. 38822-1-III
*State v. Stotts*

testified at trial. Stotts also contends that his trial attorney was constitutionally

ineffective for failing to object to these comments in closing.

Although we determine that the evidence is sufficient to support the convictions,

we hold that it is improper vouching for a prosecutor to suggest that law enforcement

witnesses would not risk their careers by testifying untruthfully. Additionally, while it is

not per se improper for a prosecutor to suggest negative inferences from a missing

witness, in this case, the record does not establish that the missing witness doctrine

applied and the comments improperly shifted the burden of producing evidence to Stotts.

We further conclude that defense counsel's failure to object to the improper

arguments was deficient and not part of a legitimate trial strategy because witness

credibility was a material part of the State's case. We conclude that had defense counsel

objected, there is a reasonable probability that the outcome of the trial would have been

different. Because we determine that defense counsel was ineffective, we do not reach

the prejudice prong of Stotts' prosecutorial misconduct argument. We therefore reverse

Stotts' convictions and remand for further proceedings.

## BACKGROUND

Richard and Marlene Trapp lost a book of checks and reported them stolen when

they discovered that various missing checks had been cashed. Officer Aaron Davis of the

Colville Police Department investigated the stolen checks. One of the checks had been

cashed by Stotts. Officer Davis questioned Stotts and concluded that Stotts cashed a

No. 38822-1-III
*State v. Stotts*

check knowing it was stolen. The State charged Stotts with second degree identity theft and forgery.

Stotts' case proceeded to a jury trial. Officer Davis testified that he had investigated Sarah Hill for passing fraudulent checks on the Trapps' checking account. As part of the investigation, Officer Davis obtained copies of the fraudulent checks and found a check made out to Stotts with a memo line that read "landscaping." Rep. of Proc. (RP) at 129.

Officer Davis contacted Stotts to ask him about the check. He testified that initially Stotts was evasive. Stotts told him that he knew the Trapps and that they had hired him to do landscaping work. Officer Davis informed Stotts that he had spoken with the Trapps and they told him they did not know Stotts and had not hired him to do landscaping work. Officer Davis testified that Stotts eventually confessed that an individual named Sarah Hill had made it a "habit" to pass checks to individuals in exchange for the individuals retaining some of the proceeds. Officer Davis claimed that Stotts acknowledged that this was the arrangement when he took the check from Hill and indicated that he kept $100 for himself and gave the rest of the money to Hill.

Officer Anthony Gorst of the Colville Police Department also testified. He arrived at the scene while Officer Davis was interviewing Stotts and testified, consistent with Officer Davis' testimony, that Stotts was initially evasive but eventually confessed that he had received the check from Hill and not the Trapps.

3

No. 38822-1-III
*State v. Stotts*

Stotts testified, and his testimony contradicted the police officers' testimony. He denied confessing to having cashed the check for Hill and instead said he had told Officer Davis that Hill gave him the check for cleaning up property. He claimed his cousin, Josh, was nearby during his conversation with Officer Davis. Stotts said it was dark when he received the check so he did not look at it, although he did warn Hill that the check "better cash." RP at 165. He then attempted to deposit the check and testified that it was "[h]ighly likely" he deposited it with other checks and did not notice it was not from Hill. RP at 165, 169. Stotts also claimed that the statements in the police report were untrue.

Jason Vaughan, Stotts' cousin, also testified at trial. He said he had helped Stotts with a job involving hauling garbage at some point, but he did not remember when the job had occurred. Vaughan was unable to provide specific testimony as he stated that he did not remember much from that time because he was drinking a lot. He said he did not see Stotts being paid at the job.

In the State's rebuttal, Officer Davis testified that law enforcement officers who are deemed to be untrustworthy are put on a *Brady* list that essentially results in destroying a law enforcement officer's career. Stotts did not object to this testimony.

The trial court instructed the jury that in order to find Stotts guilty of second degree identity theft, they needed to find that he knowingly obtained, possessed, transferred, or used a means of identification or the financial information of another

No. 38822-1-III
*State v. Stotts*

person, with the intent to commit any crime, knowing that the means of identification or financial information belonged to another person.

The trial court also instructed the jury that to find Stotts guilty of forgery, they would need to find that he possessed, offered, or put off as true a written instrument, which the defendant knew had been falsely made, completed, or altered, with the intent to injure or defraud.

During closing argument, the State argued Officer Davis had no motive to lie about his interactions with Stotts:

> Mr. Stotts wants you to believe that these two officers are laying. [sic]
> . . . .
> I ask you to think about who has the personal interest in the outcome of this case. Is it—Is it Off. Davis and Off. Gorst? … What interest—in the big scheme of things—let's be honest, a check cashing—would Off. Davis have to destroy his entire career. And weigh that against what interest Mr. Stotts would have—in how this will affect his life. I would submit to you that—the personal interest comes from—Mr. Stotts.

RP at 202-03. The State also noted that Stotts had not called his other cousin, Josh, who he claimed had been present during his conversation with Officer Davis, as a witness:

> In weighing the credibility of these witnesses, it might be a more difficult thing to weigh if you have Off. Davis against Mr. Stotts, maybe. I still submit to you that Off. Davis would have no reason to make that up. But there's two different officers here telling you the same story. In weighing the credibility, only, please don't mistake; Mr. Stotts has no duty to disprove any fact. I'm now talking about—credibility factors only. He says there was another person there who heard this conversation. In weighing credibility only, wouldn't it make sense that that person would

5

No. 38822-1-III
*State v. Stotts*

> come say that what he's saying is true?  That person—by no means does the defense have any duty to produce that witness whatsoever.  I'm talking about credibility only.

RP at 203-04.

The jury found Stotts guilty of second degree identity theft and forgery.  Stotts appeals.

ANALYSIS

1.      SUFFICIENCY OF EVIDENCE

Stotts challenges the sufficiency of evidence to support the convictions for forgery and second degree identity theft.  He contends that the evidence was insufficient to show that he knew Hill had stolen and forged the check.

Sufficiency of the evidence is reviewed de novo.  *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).  Washington follows the standard of review for a challenge to the sufficiency of the evidence as set out in *Jackson v. Virginia*.[2]  *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980).  When reviewing a challenge to the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319.  The purpose of this standard of review is to ensure that the fact-finder rationally applied the constitutional standard required by the due process clause of the Fourteenth Amendment

6

No. 38822-1-III
*State v. Stotts*

to the United States Constitution, which allows for conviction of a criminal offense only upon proof beyond a reasonable doubt. *Id.* at 317-18.

In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences drawn from it. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). These inferences "must be drawn in favor of the State and interpreted most strongly against the defendant." *Id*. Further, we must defer to the trier of fact to resolve conflicting testimony and evaluate the persuasiveness of the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990) (credibility determinations cannot be reviewed on appeal). Direct and circumstantial evidence are weighed equally. *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019). "[I]nferences based on circumstantial evidence must be reasonable and cannot be based on speculation." *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013).

Stotts challenges his convictions for second degree identity theft and forgery, arguing that there was insufficient evidence to show that he knew the checks were stolen and that Hill was not authorized to sign them.

To convict Stotts of identity theft, the State was required to prove that Stotts knowingly obtained, possessed, transferred, or used the financial information of another person with the intent to commit any crime, knowing that financial information belonged to another person. RCW 9.35.020(1).

---

[2] 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

7

No. 38822-1-III
*State v. Stotts*

Officers Davis and Gorst both testified that Stotts confessed to accepting the check written by Hill and made out to him in exchange for keeping part of the proceeds and giving the rest back to Hill. Considering this evidence in a light most favorable to the State, a jury could reasonably infer that Stotts possessed financial information (check), knowing it belonged to someone other than Hill, with the intent to commit a crime against the true owners of the check. Thus, there was sufficient evidence to support the conviction for second degree identity theft.

Similarly, to convict Stotts of forgery, the State had to prove that Stotts possessed, offered, or put off as true a written instrument, which Stotts knew was falsely made, with the intent to injure or defraud. RCW 9A.60.020. In light of Stotts' admission to Officer Davis, a jury could reasonably infer that he took a check made out by Hill, knowing that she did not own the check or have authority to sign the check, and presented the check to the bank with the intent to defraud the true owner of the check.

Stotts argues that because he presented evidence showing he was unaware that the check belonged to the Trapps and contradicting the police officers' testimonies, this court should determine there was insufficient evidence. This argument amounts to a request for this court to weigh evidence. This role lies exclusively with the trier of fact, the jury.

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38822-1-III
*State v. Stotts*

2.      INEFFECTIVE ASSISTANCE OF COUNSEL

Stotts alleges two instances of misconduct in the State's closing argument, neither of which were objected to below. He argues that defense counsel was ineffective for failing to object to both instances.

Criminal defendants have a constitutional right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Vazquez*, 198 Wn.2d 239, 247, 494 P.3d 424 (2021). In reviewing a claim of ineffective counsel, we start with a strong presumption that counsel's performance was effective. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). "To demonstrate ineffective assistance of counsel, a defendant must make two showings: (1) defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 334-35; *see also Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We review claims of ineffective assistance of counsel de novo. *Vazquez*, 198 Wn.2d at 249.

We begin with a strong presumption that counsel's performance was reasonable. *McFarland*, 127 Wn.2d at 335. The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the

9

No. 38822-1-III
*State v. Stotts*

circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). To show deficient performance, the defendant must demonstrate from the record the absence of a legitimate strategic or tactical reason for counsel's conduct. *McFarland*, 127 Wn.2d at 336.

Whether to object or not is a "classic example of trial tactics." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). In the context of objections, Washington courts presume "that the failure to object was the product of legitimate trial strategy." *State v. Johnston*, 143 Wn. App. 1, 20, 177 P.3d 1127 (2007). The failure to object to evidence that may be inadmissible can be a legitimate trial strategy to avoid highlighting certain evidence. *Vazquez*, 198 Wn.2d at 248. Counsel may legitimately decide that objecting to inadmissible but low-value evidence may do more harm than good. *See generally id.* at 248-49. For this reason, "[a] few or even several failures to object are not usually cause for finding that an attorney's conduct has fallen below the objective standard of conduct." *Id.* at 250.

Conversely, if the defendant can show that the failure to object was not a legitimate trial strategy, then the failure to object to inadmissible evidence is considered deficient performance. *State v. Crow*, 8 Wn. App. 2d 480, 508, 438 P.3d 541 (2019). When the inadmissible evidence is significant to the State's case, either in quantity or

10

No. 38822-1-III
*State v. Stotts*

quality, there is generally no legitimate reason for failing to object. *See Vazquez*, 198 Wn.2d at 248, 250 (failing to object to testimony central to the State's case, or a significant quantity of objectionable evidence falls below the standard of reasonableness). Absent an obvious trial strategy under these circumstances, when a defendant demonstrates that objections would have been sustained, then the defendant meets the burden of showing that counsel's performance was deficient. *See Id.* at 248; *Crow*, 8 Wn. App. 2d at 508. Prejudice is demonstrated by showing that the outcome of the trial would have been different absent the objectionable material. *Vazquez*, 198 Wn.2d at 248-49.

Brady *List*

Stotts first argues that his attorney failed to object to the State's improper admission and reference to the *Brady* list. In order to determine if the failure to object was deficient, we must first determine if the evidence and arguments were improper. After asking Officer Davis about the relevance of the *Brady* list during the trial, the prosecutor made the following argument during closing:

> I ask you to think about who has the personal interest in the outcome of this case. Is it—Is it Off. Davis and Off. Gorst? . . . What interest—in the big scheme of things—let's be honest, a check cashing—would Off. Davis have to destroy his entire career. And weigh that against what interest Mr. Stotts would have—in how this will affect his life. I would submit to you that—the personal interest comes from—Mr. Stotts.

11

No. 38822-1-III
*State v. Stotts*

RP at 203. The State contends that this was not improper argument but rather simply pointing out the witnesses' motivations to testify truthfully as provided in the jury instructions.

"'In order to establish prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" *State v. Slater*, 197 Wn.2d 660, 681, 486 P.3d 873 (2021) (internal quotation marks omitted) (quoting *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)). The burden for proving prosecutorial misconduct is on the defendant. *State v. Crossguns*, 199 Wn.2d 282, 297, 505 P.3d 529 (2022).

A prosecutor commits misconduct when they vouch for a witness's credibility. *State v. Warren*, 165 Wn.2d 17, 30, 195 P.3d 940 (2008). "Vouching may occur in two ways: the prosecution may place the prestige of the government behind the witness or may indicate that information not presented to the jury supports the witness's testimony." *State v. Coleman*, 155 Wn. App. 951, 957, 231 P.3d 212 (2010). A prosecutor places the prestige of the office behind a witness when they express a personal belief in the veracity of testimony. *See In re Pers. Restraint Glasmann*, 175 Wn.2d 696, 706, 286 P.3d 673 (2012).

Two concerns are raised when a prosecutor vouches for a witness:

[S]uch comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on

12

No. 38822-1-III
*State v. Stotts*

> the basis of the evidence presented to the jury; and the prosecutor's opinion
> carries with it the imprimatur of the Government and may induce the jury
> to trust the Government's judgment rather than its own view of the
> evidence.

*United States v. Young*, 470 U.S. 1, 18-19, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985).

The State contends that the prosecutor's comments merely pointed out the bias and lack of bias for each witness. We disagree. The prosecutor elicited testimony that officers who were "deemed untrustworthy" were placed on a *Brady* list that effectively ended their career and then circled back to this evidence in closing by suggesting that this officer would not destroy his career by being untrustworthy. The prosecutor's reference to the *Brady* list as an external lie detector suggested to the jury that some unknown government entity monitors officers for their truthfulness. If this unknown entity determines that an officer is untruthful based on unknown factors, then the officer loses their job and would not be testifying at trial.

In reality, the prosecutor's office determines which officers are placed on the *Brady* list. Mary Ellen Reimund, *Are Brady Lists (aka Liar's Lists) the Scarlet Letter for Law Enforcement Officers? A Need for Expansion and Uniformity*, 3 INT'L J. HUMANS. & SOC. SCI. 1 (Sept. 2013). So arguing that the *Brady* list is evidence of or motivation for truthfulness is another way of saying that the prosecutor's office has vetted the witness and vouches for the officer's credibility. If the jury knows that the prosecutor maintains the *Brady* list, then it is direct evidence of vouching. If they are unaware of this, then the

13

No. 38822-1-III
*State v. Stotts*

argument suggests that evidence outside the record is monitoring the credibility of witnesses. Either way, it constitutes improper vouching. For this reason, "[i]t is . . . impermissible for a prosecutor to ask a jury to consider whether law enforcement agents would risk their careers to commit perjury." 6 WAYNE R. LAFAVE, ET AL., *Criminal Procedure* § 24.7(e) at 602 & n.67 (4th ed. 2015).

Although there are no published Washington cases that hold it is improper for a prosecutor to argue that a police officer risks their career by providing false testimony, there are two unpublished Washington cases and several federal cases that reach this result. *See State v. Anderson*, No. 78802-7-I (Wash. Ct. App. Mar. 9, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/788027.pdf; *State v. Dunbar*, No. 35350-8-III, slip op. at *8 (Wash. Ct. App. Mar. 7, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/353508.pdf; *Draper v. Rosario*, 836 F.3d 1072, 1083 (9th Cir. 2016) (prosecutor's argument that "'the existence of legal and professional repercussions served to ensure the credibility of the officers' testimony'" was improper vouching) (quoting *United States v. Weatherspoon*, 410 F.3d 1142, 1146 (9th Cir. 2005)); *Id.* (improper vouching to argue, "These are officers that risk losin' their jobs, risk losin' their pension, risk losin' their livelihood. And, on top of that if they come in here and lie, I guess they're riskin' bein' prosecuted for perjury."); *United States v. Combs*, 379 F.3d 564, 574 (9th Cir. 2004) (improper vouching to argue that to acquit defendant the jury had to believe that the agent risked losing his job by lying on the

14

No. 38822-1-III
*State v. Stotts*

stand); *Jordan v. Hepp*, 831 F.3d 837, 847 (7th Cir. 2016) (improper vouching for prosecutor to argue that someone is lying and the detective is not going to put her whole career and future on the line for this case).

While there are no Washington cases directly on point, Washington courts have found improper vouching under similar circumstances when the prosecutor advises the jury that the State is monitoring a witness's testimony for truthfulness. In *State v. Ish*, 170 Wn.2d 189, 196, 241 P.3d 389 (2010), the court found improper vouching when a prosecutor introduced evidence on direct examination that a witness had reached a plea agreement with the prosecutor's office to testify truthfully. "'[P]rosecutorial remarks implying that the government is motivating the witness to testify truthfully: . . . are prosecutorial overkill.'" *Id*. at 198 (internal quotation marks omitted) (quoting *United States v. Roberts*, 618 F.2d 530, 536 (9th Cir. 1980) (quoting *United States v. Arroyo-Angulo*, 580 F.2d 1137, 1150 (2d Cir. 1978) (Friendly, J., concurring))).

In light of this history and precedent, we take this opportunity to make it clear that it is improper vouching for a prosecutor to argue that law enforcement witnesses would not risk their career by testifying untruthfully.

*Commenting on Lack of Evidence to Corroborate Defendant's Testimony*

Before turning to the questions of deficiency and prejudice, we explain Stotts' other ineffective assistance of counsel argument, that defense counsel was deficient for failing to object to the second alleged incident of prosecutorial misconduct. Stotts argues

15

No. 38822-1-III
*State v. Stotts*

that the State committed misconduct by shifting the burden of proof when it questioned why Stotts' cousin did not come forward to corroborate Stotts' testimony. The State contends that the prosecutor was properly pointing out the presence and absence of evidence to corroborate each witnesses' testimony. Stotts claims that defense counsel's failure to object to this line of argument was deficient.

At trial, Stotts testified that he told the officers he received the checks for work performed. He denied confessing to any involvement in a check cashing scheme. He also mentioned that his cousin was present during this conversation with the officers. In closing, the State argued that each officer's testimony corroborated the other whereas Stotts' testimony was not corroborated by the officers or his cousin. In doing so, the State noted several times that it was not suggesting that Stotts had a burden to produce evidence. Instead, in considering the credibility of Stotts' testimony, the State rhetorically asked whether it would make sense that Stotts' cousin would come forward to corroborate his testimony.

A prosecutor commits misconduct if they shift the burden of proof to the defendant. *State v. Thorgerson*, 172 Wn.2d 438, 453, 258 P.3d 43 (2011). "A prosecutor generally cannot comment on the defendant's failure to present evidence because the defendant has no duty to present evidence." *Id*. However, when a defendant chooses to testify, the State may cross-examine the defendant and attack the defendant's credibility like any other witness. *State v. Etheridge*, 74 Wn.2d 102, 113, 443 P.2d 536 (1968). In

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38822-1-III
*State v. Stotts*

determining the credibility of witnesses, the jury was instructed that it could consider the reasonableness of a witness's statement in the context of all the other evidence. In other words, a jury may consider whether the witness's testimony was corroborated by other evidence.

In *State v. Jackson*, the prosecutor reminded the jury that the State had the burden of proof and the jury was solely responsible for determining the credibility of witnesses. 150 Wn. App. 877, 885, 209 P.3d 553 (2009). The prosecutor then summarized the evidence that supported the credibility of the State's witnesses and the lack of corroborating evidence to support the defendant's testimony. Specifically, the prosecutor pointed out that the testimony of four officers corroborated each other's testimony while there was no evidence to corroborate the defendant's testimony.

On appeal, the court concluded that this argument did not suggest that the defendant had an obligation to produce evidence. "The mere mention that defense evidence is lacking does not constitute prosecutorial misconduct or shift the burden of proof to the defense." *Id*. at 885-86. Notably, the prosecutor did not ask the jury to compare the defendant's evidence with the State's evidence for purposes of meeting its burden of proof. Instead, as the jury instructions allow, the prosecutor suggested that the jury should compare the testimony of the witnesses to each other in determining each witness's credibility. *Id*. at 886.

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38822-1-III
*State v. Stotts*

This case is similar to *Jackson*, with one additional caveat. In this case, the prosecutor was also very clear that the State had the burden of proof and Stotts had no burden to produce evidence. The prosecutor pointed out that the testimony of each officer corroborated the other. However, in pointing out that Stotts' testimony was not corroborated by other evidence, the State went beyond the evidence produced at trial and suggested that if Stotts' cousin, Josh, would have corroborated his testimony, then it would have made sense for Josh to testify. In essence, the State was raising the missing witness doctrine.

While a prosecutor may not shift the burden of proof to a defendant, if the missing witness doctrine applies, the prosecutor may comment on the defense's failure to call a witness. "The State may point out the absence of a 'natural witness' when it appears reasonable that the witness is under the defendant's control or peculiarly available to the defendant and the defendant would not have failed to produce the witness unless the testimony were unfavorable." *State v. Montgomery*, 163 Wn.2d 577, 598, 183 P.3d 267 (2008).

While the State may reference the missing witness doctrine in certain circumstances, there are important limitations to prevent the doctrine from being improperly used to shift the burden of producing evidence to the defendant. *Id.* at 598-99.

> First, the doctrine applies only if the potential testimony is material and not cumulative. Second, the doctrine applies only if the missing witness is particularly under the control of the defendant rather than being equally

18

No. 38822-1-III
*State v. Stotts*

> available to both parties. *Third, the doctrine applies only if the witness's absence is not satisfactorily explained.* For example, if the witness is not competent or if testimony would incriminate the witness, the absence is explained and no instruction or argument is permitted. Finally, the doctrine may not be applied if it would infringe on a criminal defendant's right to silence or shift the burden of proof.

*Id*. (internal citations omitted) (emphasis added). In order to ensure that the doctrine properly applies in a particular case, the State must raise it early enough in the proceedings for the defendant to explain why the witness is not being called. *Id*. at 599.

In this case, Josh's potential testimony would have been material, and it appears that Josh was particularly available to Stotts. Moreover, pointing to Josh's absence would not have infringed on Stotts' right to remain silent or shift the burden of proof because the testimony would have been used to corroborate Stotts' testimony. But the State did not raise the missing witness doctrine before or during trial and did not request a missing witness jury instruction. Consequently, nothing in the record shows why Josh did not testify. If Josh was not available to testify, his absence at trial cannot be attributed to Stotts.

Because the State failed to show that the missing witness doctrine applied, it was improper to raise it for the first time in closing argument. It is one thing to point out that there is no evidence to corroborate a defendant's testimony and another to suggest adverse inferences from a missing witness without first satisfying the limitations on using this doctrine. Here, by arguing that the jury could make an adverse inference from the

19

No. 38822-1-III
*State v. Stotts*

failure of Josh to come forward and corroborate Stotts' testimony when it is not clear that this witness was available to testify, improperly shifts the burden of proof. Accordingly, we determine that the argument regarding the lack of testimony from Josh constituted prosecutorial misconduct.

*Deficiency*

In this case, we conclude that Stotts' trial attorney was constitutionally deficient for failing to object to the prosecutor's improper arguments. As we concluded above, the prosecutor's references to the *Brady* list as a credibility filter and a missing witness were improper arguments. Consequently, we assume that, had Stotts' attorney objected, the objections would have been sustained.

As we noted above, we presume that unless the defendant can demonstrate otherwise, counsel's failure to object was part of a legitimate trial strategy. *Johnston*, 143 Wn. App. at 20. In this case, Stotts meets his burden of showing the lack of any legitimate trial strategy for failing to object.

While investigating fraudulent checks, police came across a check payable to Stotts with the notation "landscaping" on it. Police testified that Stotts eventually admitted that he took the check from Sarah Hill and cashed it in exchange for part of the proceeds. Stotts denied this and testified that he accepted the check from Hill in exchange for cleaning up property and had no idea the check was bad. The credibility of the witness was not low-value evidence; it was central and material to the case.

20

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38822-1-III
*State v. Stotts*

In searching the record for a conceivable trial strategy, we note that defense counsel failed to make a single objection throughout the entire trial. *See generally* Report of Proceedings. This despite numerous instances of seemingly objectionable testimony. For example, one officer repeatedly testified that Stotts was lying during his conversation with police. The same officer testified about hearsay statements made by the victims. The officer also testified that he contacted a potential defense witness who did not corroborate Stotts' version of events and refused to testify at trial. One of the victims testified about a hearsay conversation he had with his son (who did not testify). And during cross-examination, the prosecutor asked Stotts if the officers' testimony was false.

The credibility of the witnesses was significant to the State's case. Defense counsel acknowledged this in closing argument. Nothing in the record suggests a legitimate trial strategy for failing to object to improper comments made to bolster the credibility of the State's witnesses. The failure to object to the improper comments fell below the objective standard of reasonableness and constituted deficient performance.

*Prejudice*

After demonstrating deficient performance, a defendant must still show prejudice in order to prevail on a claim of ineffective assistance of counsel. Prejudice is shown by demonstrating a reasonable probability that proper objections would have changed the result of Stotts' guilty verdict. *Vazquez*, 198 Wn.2d at 267. Ultimately, we must concern ourselves with "'""'the fundamental fairness of the proceeding whose result is being

21

No. 38822-1-III
*State v. Stotts*

challenged.'"'" *Id.* at 268 (quoting *State v. Lopez*, 190 Wn.2d 104, 124, 410 P.3d 1117 (2018) (quoting *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 844, 280 P.3d 1102 (2012) (quoting *Strickland*, 466 U.S. at 696))).

While the evidence in this case was sufficient, it was not overwhelming. As we have noted several times, the credibility of the witnesses was material to the State's case. Both officers testified that Stotts confessed to participating in a scheme to cash bad checks in return for part of the proceeds. Stotts denied being involved in the scheme or saying this to the police. Other than Stotts' alleged confession, there is no other direct evidence and very little circumstantial evidence to show that he was involved in a check cashing scheme run by another person. The limited evidence, the failure to object, and the improper comments raise legitimate concerns about the fundamental fairness of the trial. Thus, we conclude that had defense counsel objected, there is a reasonable probability that the outcome of the trial would have been different.

In both instances of prosecutorial misconduct, Stotts demonstrates that defense counsel was deficient and that this deficiency prejudiced him. Accordingly, we determine that Stotts was deprived of his right to effective assistance of counsel.[3]

---

[3] Stotts also argues that his convictions should be reversed strictly on prosecutorial misconduct grounds. Along with determining that there was prosecutorial misconduct, as this court already has, this would also require us to determine whether the misconduct was so flagrant and illintentioned that no jury instruction could have cured it. *See Crossguns*, 199 Wn.2d at 299. Because we are reversing on the ineffective assistance of counsel issue, we decline to address the remainder of Stotts' prosecutorial misconduct argument.

No. 38822-1-III
*State v. Stotts*

Reversed and remanded.

_____
Staab, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Pennell, J.