## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  57526-4-II |
| Respondent, | |
| v. | |
| WILLIAM ERNESTO MENJÍVAR HERNÁNDEZ, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, P.J. — William Ernesto Menjívar Hernández appeals two of six convictions following a jury trial.  Specifically, Menjívar Hernández appeals his conviction for intimidating a witness based on insufficient evidence and his conviction for third degree rape based on erroneous jury instructions.  Alternatively, Menjívar Hernández argues ineffective assistance of counsel for his counsel's failure to object to the to-convict instructions for third degree rape.  Additionally, based on recent statutory amendments, Menjívar Hernández requests that this court order the trial court to strike the crime victim penalty assessment (CVPA) and DNA fee imposed on him at sentencing.

We hold that there is insufficient evidence to support the elements of intimidating a witness; therefore, we reverse Menjívar Hernández's conviction for intimidating a witness and remand to the trial court to dismiss the charge of intimidating a witness with prejudice.  With regard to the third degree rape conviction, we hold that the trial court erred when it instructed the jury on an uncharged alternative means, and the jury could have convicted Menjívar Hernández

on the basis of the uncharged means. Therefore, we reverse Menjívar Hernández's third degree rape conviction and remand for a new trial.[1]

FACTS

A.   BACKGROUND

Menjívar Hernández and V.P. met in 2017 and began dating. In early 2018, Menjívar Hernández moved into the apartment that V.P. lived in with her son. V.P. and Menjívar Hernández had an arrangement in which Menjívar Hernández would pay the full rent while V.P. would pay for food and any other costs. Menjívar Hernández initially paid the rent, but he soon failed to make full rental payments.

In 2020, at the onset of the COVID pandemic, V.P.'s brother persuaded her that banks would fail. V.P. began withdrawing cash from her bank accounts and storing the cash in her underwear drawer. V.P. ultimately stored $5,200 in her drawer.

In June 2020, V.P. realized that most of the cash in her drawer was missing. V.P. first approached her son to ask about the missing funds. Her son told her that he did not know anything about the cash and had not known she stored cash in the apartment. V.P. then began to keep close track of the cash in her drawer. She noticed that the amount of money in her drawer continued to decrease. However, she never witnessed Menjívar Hernández take any cash.

Then, on July 11, 2020, V.P. received notices of large withdrawals made from her bank accounts on July 10. Menjívar Hernández was with V.P. when she received the notices. V.P. was

---

[1] Because we reverse Menjívar Hernández's intimidating a witness and third degree rape convictions and remand both charges to the trial court with instructions to dismiss the former with prejudice and for a new trial on the latter, we decline to address Menjívar Hernández's request regarding the CVPA and DNA fee.

upset about the unauthorized withdrawals and told Menjívar Hernández that she planned to press charges against whoever had stolen from her. In response, Menjívar Hernández admitted to taking V.P.'s money, both from her bank accounts and her drawer. V.P. had never given Menjívar Hernández permission to use her bank card or access her accounts or take the cash in her drawer.

Upon hearing Menjívar Hernández's admission, V.P. told him she planned to go to the police. Menjívar Hernández then became violent. He grabbed V.P., threw her on the bed, and attempted to force himself on her. V.P. managed to scratch and bite Menjívar Hernández and break loose; she then retreated to the bedroom corner. Menjívar Hernández initially approached V.P. apologetically. However, he then grabbed her again, forced her face down on the bed, and had sex with V.P.

After Menjívar Hernández forced V.P. to have sex, Menjívar Hernández threatened V.P. that if she went to the police, he would hurt her and her son. Following the incident, any time V.P. mentioned money, "the same thing repeated over again"—Menjívar Hernández "would get furious, he would grab [her]," and she "would end up hurt again." 3 Verbatim Rep. of Proc. (VRP) (Sept. 6, 2022) at 386.

Menjívar Hernández moved out of V.P.'s apartment on September 1, 2020. In early September, after Menjívar Hernández moved out, V.P. went to the Lakewood Police Department to file a report against Menjívar Hernández. V.P., a native-Spanish speaker, ultimately wrote a statement in Spanish for the police because she could not fully communicate with the responding officer due to a language barrier.

V.P. then petitioned for a protection order at superior court. She was granted a temporary order the same day, and then on September 24, following a telephonic hearing, the court issued a

one-year protection order prohibiting Menjívar Hernández from contacting V.P. or coming within 500 feet of her residence. Menjívar Hernández did not attend the telephonic hearing. He was, however, personally served with the order.

After V.P. obtained the protection order, she called law enforcement to inquire about the status of her case. During the call, V.P. learned that Menjívar Hernández "had not been charged with all of the charges, so they hadn't pressed all the charges." 3 VRP (Sept. 6, 2022) at 389. Apparently, after V.P.'s initial report to the police in September 2020, there was a municipal court assault charge filed against Menjívar Hernández, but no charges regarding the thefts were filed. However, by the time V.P. had requested an update, Menjívar Hernández had entered into a pretrial diversion agreement on the municipal charge.[2]

In October 2020, Lakewood Police Detective Michelle Hunt was assigned to follow up with V.P. Detective Hunt, a fluent Spanish speaker, conducted a formal interview with V.P. in Spanish. Detective Hunt's assignment came from the prosecutor's office, as opposed to from her sergeant. The purpose of Detective Hunt's assignment was to formally document the content of V.P.'s handwritten statement. The prosecutor's office did not request Detective Hunt to conduct further investigation. Detective Hunt never spoke with other witnesses or with Menjívar Hernández.

In late April 2021, around 9:00 p.m., V.P. briefly stepped out of her apartment to lock her apartment complex's laundry room. She left the door to her apartment unlocked. V.P.'s son was

---

[2] Beyond brief references to a purported municipal charge against Menjívar Hernández, the record does not contain any evidence regarding the charge or the pretrial diversion agreement that Menjívar Hernández entered into.

at a friend's house. Upon returning, V.P. encountered Menjívar Hernández exiting her apartment. Menjívar Hernández grabbed V.P. by the chin and said "if [she] told the police about this, he would come back for [her]." 3 VRP (Sept. 6, 2022) at 393. V.P. understood Menjívar Hernández's statement to be a threat of harm against her and her son.

The next day, V.P. and her son abandoned her apartment. V.P. did not immediately call 911 about the encounter. However, V.P. later contacted the Lakewood Police Department to report Menjívar Hernández. While speaking with the police on the telephone V.P. could not recall the exact date of the April incident. According to V.P., the police told her that because she did not have an exact date for her encounter with Menjívar Hernández, they could note it, but she could not press charges.

At some point, V.P. called Detective Hunt to provide an updated address and inquire about the status of her case. The record is not clear as to when V.P. called Detective Hunt about the status of her case.

B.   PROCEDURAL HISTORY

In August 2021, the State filed a Declaration for Determination of Probable Cause. The probable cause declaration alleged in part: "[Menjívar Hernández] said he would pay [V.P.] back for money taken, but he wanted to have sex with her whenever he wanted to and she better not change that or else he wouldn't pay her back." Clerk's Papers (CP) at 2. Based on the probable cause declaration, Menjívar Hernández allegedly made this statement to V.P. sometime after he admitted to taking her money.

The State charged Menjívar Hernández with second degree identity theft and two counts of second degree theft. Shortly before trial, the State filed an "Amended Information" to include

charges of third degree rape, violation of a protection order, and intimidating a witness, in addition to the theft and identity theft charges. The charges of violation of a protection order and intimidating a witness were based on V.P.'s encounter with Menjívar Hernández in April 2021. As to the rape charge, the Amended Information stated:

> WILLIAM ERNESTO MENJIVAR HERNANDEZ . . . on or about the 11th day of July, 2020, did unlawfully and feloniously, under circumstances not constituting rape in the first or second degree, engage in sexual intercourse with [V.P.], where the victim did not consent by actual words or conduct indicating freely given agreement to the act of sexual intercourse with the perpetrator[], contrary to RCW 9A.44.060(1)(a).

CP at 19.

Menjívar Hernández's case proceeded to a jury trial.

During open statements, the State argued in part:

> [V.P.] finally confronted [Menjívar Hernández] and he confessed to it. He confessed to using her debit card, using her PIN and taking money.
> What he did next, though, was made an arrangement. The arrangement was that if she continued to serve him sexually, that she would get her money back. His whole interest in this was power and control for his own benefit.
> Until one night, tired of this, disenchanted with their relationship, sick of his demands, he forced her down to the bed and tried to penetrate her. She was able to bite one of his fingers. In the heat of it, she was able to escape. She retreated to a corner of her room, sobbing. [Menjívar Hernández] is alleged at that time to have come over, apologized, trying to reconcile. When her sobbing didn't [stop], he grabbed her by the hair, threw her face down on her bed—because that way she couldn't bite him—and there, he raped her.

3 VRP (Sept. 6, 2022) at 332-33.

V.P. and Detective Hunt testified as outlined above. Evidence regarding Menjívar Hernández's municipal assault charge and pretrial diversion agreement was not presented to the jury.

Prior to closing arguments, the trial court discussed jury instructions with the parties. The State proposed jury instructions. The trial court asked Menjívar Hernández's counsel if he had any issue with or objection to the State's proposed instructions. Menjívar Hernández's counsel replied that they did not have any objections. However, the parties then discussed edits to the to-convict instruction for third degree rape.

The proposed to-convict jury instruction for third degree rape provided two alternative means under which Menjívar Hernández could be convicted. Option (a) allowed the jury to convict if "[V.P.] did not consent to sexual intercourse with [Menjívar Hernández]." CP at 143. Option (b) allowed a conviction if "[V.P.] engaged in sexual intercourse because there was a threat of substantial unlawful harm to her property rights." CP at 143.

The State asked Menjívar Hernández's counsel, "[O]n the to convict on Rape . . . there are two ways to do it. What's your proposal for incorporating that the jury may pick either one?" 4 VRP (Sept. 7, 2022) at 463. Menjívar Hernández's counsel responded that the instruction, written with "bracketed numbers," was appropriate given the two alternative means of committing the crime. 4 VRP (Sept. 7, 2022) at 463. The trial court, the State, and Menjívar Hernández's counsel then discussed whether the two alternatives of committing third degree rape should be broken into "'2A or 2B.'" 4 VRP (Sept. 7, 2022) at 464. The State noted, "Well, [the jury] can have an issue with 2A but if everybody agrees that 2B is satisfied, then that is still a conviction. So I think it needs to be two, total." 4 VRP (Sept. 7, 2022) at 464. Menjívar Hernández's counsel agreed and offered further input as to how best to indicate that two alternatives for conviction were possible. The parties ultimately agreed to the following instruction, listed as Instruction 19:

To convict [Menjívar Hernández] of the crime of rape in the third degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 11th day of July, 2020, [Menjívar Hernández] engaged in sexual intercourse with [V.P.];

(2) (a) That [V.P.] did not consent to sexual intercourse with [Menjívar Hernández], or

(b) that [V.P.] engaged in sexual intercourse because there was a threat of substantial unlawful harm to her property rights;

and

(3) That any of these acts occurred in the State of Washington.

If you find from the evidence that elements (1), and (3), and either of the alternative elements (2)(a) or (2)(b) have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty. To return a verdict of guilty, the jury need not be unanimous as to which of alternatives (2)(a) or (2)(b) has been proved beyond a reasonable doubt, as long as each juror finds that at least one alternative has been proved beyond a reasonable doubt.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of elements (1), (2), and (3), then it will be your duty to return a verdict of not guilty.

CP at 45.

There were three additional instructions related to the third degree rape charge. Instruction 18 stated: "A person commits the crime of rape in the third degree when he or she engages in sexual intercourse with another person when the other person did not consent to the sexual intercourse or there was threat of substantial unlawful harm to property rights of the other person." CP at 44. Instruction 20 stated: "Sexual intercourse means that the sexual organ of the male entered and penetrated the sexual organ of the female and occurs upon any penetration, however slight." CP at 46. Instruction 21 stated: "Consent means that at the time of the act of sexual intercourse or contact there are actual words or conduct indicating freely given agreement to have sexual intercourse or contact." CP at 47.

During closing statements, the State referenced the alleged rape:

On July 11th, something else happened. Invariably, this was likely very destructive to their relationship. But instead of reconciliation, Mr. Menjivar Hernandez decided to use power and control over [V.P.]. This wasn't a matter of, "I will pay you back, I love you, I goofed up." This was, "I will pay you back if you maintain my sexual access to your body." She had to whore herself for her own money.

. . . .

On July 11th, the defendant raped [V.P.]. You heard her testimony. You heard her testify through sobs, this is what happened, that on the 11th day of July, the defendant engaged in sexual intercourse with [V.P.] and she did not consent. And that these acts occurred in their apartment in Lakewood in the State of Washington.

4 VRP (Sept. 7, 2022) at 473, 477.

During jury deliberations, the jury asked a question. The question stated: "What date did the actual sexual assault take place. We would like clarification what occurred on September 1st 2020." CP at 22. The trial court answered: "Please refer to the court's instructions." CP at 22.

The jury convicted Menjívar Hernández of all charges. Menjívar Hernández was sentenced to 41 months' total confinement. The trial court also imposed a $500 crime victim assessment and $100 DNA fee. The trial court did not make any specific findings as to Menjívar Hernández's ability to pay legal financial obligations. However, during the sentencing hearing, Menjívar Hernández's counsel argued that Menjívar Hernández had "previously been adjudged as indigent." VRP (Nov. 4, 2022) at 10.

Menjívar Hernández's counsel filed a motion and certificate for order of indigency and appointment of attorney on appeal. The motion stated, "[Menjívar Hernández] was found indigent

by order of this court on the 20th day of August 2021."[3] CP at 111. The trial court signed an order of indigency for the purposes of appeal.

Menjívar Hernández appeals.

After the parties submitted briefing to this court, the State filed a "Notice of Concession of Errors." The State conceded error on Menjívar Hernández's claim of insufficiency of evidence regarding his conviction of intimidating a witness and on instructional error and ineffective assistance of counsel regarding his conviction of third degree rape.

## ANALYSIS

A.    WITNESS INTIMIDATION

Menjívar Hernández argues that there is insufficient evidence to support his conviction for intimidating a witness under RCW 9A.72.110(1)(a). Specifically, Menjívar Hernández asserts that the evidence is insufficient to prove that Menjívar Hernández sought to influence V.P.'s testimony. The State concedes there is insufficient evidence to affirm Menjívar Hernández's conviction under RCW 9A.72.110(1)(a) and the conviction requires dismissal. We agree with Menjívar Hernández and accept the State's concession.

1.    Legal Principles

RCW 9A.72.110(1)(a), under which Menjívar Hernández was charged, provides that an individual is guilty of intimidating a witness if that individual, "by use of a threat against a current or prospective witness, attempts to: . . . [i]nfluence the testimony of that person."

---

[3] The August 20, 2021 order of indigency is not part of the record before this court.

A "threat" means to "communicate, directly or indirectly, the intent immediately to use force against any person who is present at the time." RCW 9A.72.110(3)(a). A threat also includes communication of the intent to: "cause bodily injury in the future to the person threatened or to any other person" or to "cause physical damage to the property of a person other than the actor." RCW 9A.04.110(28)(a), (b). A threat that prevents a person from reporting a crime to the police is insufficient to prove that the threat was an attempt to influence that person's testimony. *State v. Brown*, 162 Wn.2d 422, 430, 173 P.3d 245 (2007).

A "current or prospective witness" is a "person endorsed as a witness in an official proceeding"; a "person whom the actor believes may be called as a witness in any official proceeding"; or a "person whom the actor has reason to believe may have information relevant to a criminal investigation or the abuse or neglect of a minor child." RCW 9A.72.110(3)(b).

"Testimony" includes any oral or written statements, documents, or materials "that may be offered by a witness in an official proceeding." RCW 9A.72.010(6).

We review claims of sufficiency of the evidence de novo. *State v. Stotts*, 26 Wn. App. 2d 154, 162, 527 P.3d 842 (2023). In claims of insufficient evidence, a defendant admits the truth of the State's evidence and all reasonable inferences drawn therefrom. *Id.* at 163. We view the evidence in a light most favorable to the State to "'determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Conaway*, 199 Wn.2d 742, 748, 512 P.3d 526 (2022) (quoting *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009)).

2.      Insufficient Evidence of Intimidating a Witness

The intimidating a witness charge was based on the incident in April 2021, when V.P. encountered Menjívar Hernández exiting her apartment. During trial, V.P. testified that Menjívar Hernández grabbed her by the chin and said "if [she] told the police about this, he would come back for [her]." 3 VRP (Sept. 6, 2022) at 393. V.P. understood Menjívar Hernández's statement to be a threat of harm against her and her son. V.P. contacted the police to report her encounter with Menjívar Hernández. However, Menjívar Hernández was not charged until August 2021.

In September 2020, approximately seven months prior to the April 2021 incident, V.P. had reported Menjívar Hernández to the police. However, the record is not clear to what extent there was an ongoing—if any—criminal investigation into Menjívar Hernández at the time he threatened V.P. in April 2021. Indeed, Detective Hunt testified that she had been assigned in October 2020 to follow up with V.P. only to formally document V.P.'s statement, not to conduct an investigation.

While we may infer that Menjívar Hernández knew he violated the protection order in April 2021, that is different from whether Menjívar Hernández knew of or believed there to be an ongoing criminal investigation or whether he believed V.P. would be called as a *witness* to *testify* in an *official proceeding*. The record is devoid of any evidence regarding an official proceeding or criminal investigation in which V.P. would have been testifying in at the time of the April 2021 incident. Moreover, when Menjívar Hernández grabbed V.P., he threatened her against going to the *police*. Menjívar Hernández did not threaten V.P. against speaking to attorneys, in court, or in any proceeding. Evidence that a person threatened another to prevent reports to the police is insufficient to prove that the threat was an attempt to influence testimony. *Brown*, 162 Wn.2d at 430.

Because Menjívar Hernández specifically threatened V.P. against going to the police, there is no evidence that the State had filed charges against Menjívar Hernández in April 2021, and the record does not contain evidence relating to Menjívar Hernández's alleged municipal court charge, we accept the State's concession and hold that there is insufficient evidence to prove Menjívar Hernández intimidated a witness by attempting to influence V.P.'s testimony under RCW 9A.72.110(1)(a). Therefore, we reverse Menjívar Hernández's conviction of intimidating a witness and remand to the trial court to dismiss the intimidating a witness charge with prejudice.

B.    THIRD DEGREE RAPE JURY INSTRUCTIONS AND INEFFECTIVE ASSISTANCE OF COUNSEL

Menjívar Hernández argues that the trial court erred "when it instructed the jury on an uncharged alternative means of committing third degree rape." Br. of Appellant at 19. The State concedes there was both instructional error and ineffective assistance of counsel which requires reversal of Menjívar Hernández's third degree rape conviction.

We agree that the trial court erred when it instructed the jury on an uncharged alternative means of committing third degree rape. Further, even though Menjívar Hernández invited the error, it was a result of ineffective assistance of counsel. Therefore, invited error does not preclude our review. Thus, we reverse Menjívar Hernández's rape conviction and remand for a new trial.

    1.    Legal Principles

    a.    Jury instructions

Under RCW 9A.44.060(1), a person is guilty of third degree rape "when, under circumstances not constituting rape in the first or second degrees, such person engages in sexual intercourse with another person: (a) Where the victim did not consent as defined in [RCW

9A.44.010(2)], to sexual intercourse with the perpetrator; or (b) Where there is threat of substantial unlawful harm to property rights of the victim."

The State is constitutionally required to inform a defendant of the criminal charges he or she will face at trial. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Sanchez*, 14 Wn. App. 2d 261, 267, 471 P.3d 910 (2020). "'When a statute sets forth alternative[s] . . . by which a crime can be committed, the charging document may charge none, one, or all of the alternatives, provided the alternatives charged are not repugnant to one another.'" *Sanchez*, 14 Wn. App. 2d at 267 (alterations in original) (quoting *State v. Chino*, 117 Wn. App. 531, 539, 72 P.3d 256 (2003)). "Instructing the jury on uncharged alternatives is a manifest error affecting a constitutional right that this court will address for the first time on appeal." *Id.*

We review errors in jury instructions de novo. *State v. Weaver*, 198 Wn.2d 459, 464, 496 P.3d 1183 (2021). If a charging document charges only one alternative, "it is error to instruct the jury that it may consider other ways or means by which the crime could have been committed, regardless of the range of evidence admitted at trial." *Sanchez*, 14 Wn. App. 2d at 267. The manner of committing a crime is an element that a defendant must be informed of so he or she can prepare a defense. *Id.* Accordingly, an instruction that contains both a charged and uncharged alternative is error. *Id.*

When an instructional error favors the prevailing party, it is presumed prejudicial unless it is clear the error was harmless. *Chino*, 117 Wn. App. at 540. An error may be harmless when other jury instructions "potentially cure[] the error by clearly and specifically defining the charged crime." *Sanchez*, 14 Wn. App. 2d at 267. Error may also be harmless when there is no evidence

presented on the alternative means. *Id.* at 268. However, if a jury possibly convicted a defendant based on the uncharged alternative, the error cannot be harmless. *Id.*

b.    Invited error

Generally, the invited error doctrine prohibits a party from setting up an error at trial and then complaining about that error on appeal, even when the error involves constitutional rights. *State v. Mercado*, 181 Wn. App. 624, 629-30, 326 P.3d 154 (2014); *accord State v. Brown*, 21 Wn. App. 2d 541, 561, 506 P.3d 1258, *review denied*, 199 Wn.2d 1029 (2022) (stating "even errors of a constitutional magnitude will not be reviewed when they are invited").

Courts consider "whether the petitioner affirmatively assented to the error, materially contributed to it, or benefited from it." *Mercado*, 181 Wn. App. at 630. The error must be a result of an affirmative, knowing act. *Id.* Merely failing to object does not invite error. *State v. Tatum*, 23 Wn. App. 2d 123, 128-29, 514 P.3d 763, *review denied*, 200 Wn.2d 1021 (2022). "If instructional error is the result of ineffective assistance of counsel, the invited error doctrine does not preclude review." *State v. Kyllo*, 166 Wn.2d 856, 861, 215 P.3d 177 (2009).

c.    Ineffective assistance of counsel

We review claims of ineffective assistance of counsel de novo. *Stotts*, 26 Wn. App. 2d at 165. "Criminal defendants have a constitutional right to effective assistance of counsel." *Id.* at 164; U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. Courts begin with the presumption that counsel's performance was effective. *Stotts*, 26 Wn. App. 2d at 165. "'To demonstrate ineffective assistance of counsel, a defendant must make two showings: (1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant,

*i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (emphasis in original) (quoting *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)).

Deficient performance is performance that falls below an objective standard of reasonableness based on the circumstances. *Kyllo*, 166 Wn.2d at 862. "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Id.* at 863. Under the prejudice prong, a defendant must show that "there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *Id.* at 862. Both prongs must be met to prevail on claims of ineffective assistance. *Id.*

2.    Third Degree Rape Jury Instructions

a.    Menjívar Hernández invited error in jury instruction

The record shows that Menjívar Hernández was charged under only one of the two alternatives in the third degree rape statute. Specifically, Menjívar Hernández was charged with RCW 9A.44.060(1)(a), or the option "[w]here the victim did not consent." RCW 9A.44.060(1)(a). Nowhere in the charging document is there any reference to RCW 9A.44.060(1)(b) or "[w]here there is threat of substantial unlawful harm to property rights of the victim." RCW 9A.44.060(1)(b).

The record also shows that the jury instructions explicitly allowed the jurors to convict under either (1)(a) or (1)(b). Further, the jury instructions informed the jurors that "the jury need not be unanimous as to which of [the] alternatives . . . has been proved beyond a reasonable doubt, as long as each juror finds that at least one alternative has been proved beyond a reasonable doubt."

CP at 45. Because Menjívar Hernández was not charged with RCW 9A.44.060(1)(b), these jury instructions were erroneous.

Menjívar Hernández did not raise an objection to the jury instructions below, so we must determine whether the error was invited. Here, the State proposed the jury instructions. The trial court asked Menjívar Hernández's counsel if they had any issue with or objection to the proposed instructions. Menjívar Hernández's counsel replied that they did not have any objections. Had the inquiry ended there, we could determine that the invited error doctrine does not apply. Merely failing to object does not invite error. *State v. Tatum*, 23 Wn. App. 2d at 128-29. However, the record shows that both the State and Menjívar Hernández's counsel engaged in continued discussions regarding the to-convict jury instruction for third degree rape.

The record shows that State specifically asked Menjívar Hernández's counsel for input on the to-convict instruction for third degree rape. Menjívar Hernández's counsel responded that the to-convict instruction, written with "bracketed numbers," was appropriate given the alternative means of committing the crime. 4 VRP (Sept. 7, 2022) at 463. The trial court, the State, and Menjívar Hernández's counsel then discussed how the two alternatives should be bracketed. The State noted, "Well, [the jury] can have an issue with 2A but if everybody agrees that 2B is satisfied, then that is still a conviction. So I think it needs to be two, total." 4 VRP (Sept. 7, 2022) at 464. Menjívar Hernández's counsel responded affirmatively.

While the State proposed the jury instructions, Menjívar Hernández's counsel's continued participation in the wording of the instruction is an affirmative agreement. This was not a circumstance where defense counsel merely failed to object or offered no input as to the wording. Menjívar Hernández's counsel proposed writing the instruction in a bracketed form to clearly

17

distinguish the two alternative means of conviction. Counsel also proposed language to make it clear to the jury that it could convict under either alternative. Arguably, Menjívar Hernández's counsel's suggestions materially contributed to how the jury instruction was written and ultimately given to the jury. As such, Menjívar Hernández invited the error now challenged.

        b.      Ineffective assistance

Because Menjívar Hernández invited error, we must next assess Menjívar Hernández's claim that the invited error was a result of ineffective assistance of counsel. "If instructional error is the result of ineffective assistance of counsel, the invited error doctrine does not preclude review," and we may review the issue on the merits. *Kyllo*, 166 Wn.2d at 861.

The first question in assessing whether Menjívar Hernández was denied effective assistance is whether the jury instructions were erroneous. *See id.* 863. For the reasons discussed above, because the to-convict instruction for third degree rape included an uncharged alternative means as a possible option to convict Menjívar Hernández, the jury instructions were erroneous.

Next, we determine if Menjívar Hernández's counsel's performance was deficient for agreeing to the jury instructions. *Id.* at 865. Here, the record shows that on the third degree rape charge, Menjívar Hernández was charged under only RCW 9A.44.060(1)(a). Menjívar Hernández's counsel was aware of the charge and had opportunity to discuss it with Menjívar Hernández prior to trial. Given Menjívar Hernández's counsel's awareness of the third degree rape charge, there is no conceivable legitimate trial strategy or tactical reason for not objecting to a to-convict jury instruction that includes an uncharged alternative means.

The record also shows that Menjívar Hernández's counsel not only failed to object to the erroneous to-convict instruction for third degree rape, but counsel actively engaged with the State

on how to word the instruction that included an uncharged alternative means to convict. Given the circumstances, such conduct falls below an objective standard of reasonableness. *Id.* at 862. Thus, Menjívar Hernández's counsel's performance was deficient.

Finally, we must assess whether Menjívar Hernández's counsel's deficient performance was prejudicial. *Id.* at 869. Here, during trial, the State argued that V.P. was forced into sexual relations with Menjívar Hernández to get her money back. The State used provocative language to do so: "This was, 'I will pay you back if you maintain my sexual access to your body.' She had to whore herself for her own money." 4 VRP (Sept. 7, 2022) at 473. V.P. testified about this dynamic between her and Menjívar Hernández.

The to-convict jury instruction included the uncharged alternative means under RCW 9A.44.060(1)(b), which provides that a person can be convicted of third degree rape when that person engages in sexual intercourse with another "[w]here there is threat of substantial unlawful harm to property rights of the victim." While the harm to V.P.'s property had already occurred, i.e., Menjívar Hernández had already stolen V.P.'s money by the time the dynamic developed, the jury may well have viewed V.P.'s testimony that any time V.P. mentioned money, "the same thing repeated over again": Menjívar Hernández "would get furious, he would grab [her]," and she "would end up hurt again" as a threat of substantial unlawful harm to V.P.'s property. 3 VRP (Sept. 6, 2022) at 386; *see Sanchez*, 14 Wn. App. 2d at 268 ("Error may be exacerbated by the State's reference to the uncharged means during closing argument.").

The record also shows that after hearing all the evidence, the jury was confused about the date of the alleged rape when, after the jury began its deliberations, the jury asked, "What date did the actual sexual assault take place." CP at 22. And the other jury instructions did not clarify that

the jury should only convict Menjívar Hernández based on RCW 9A.44.060(1)(a)—lack of consent. *See Sanchez*, 14 Wn. App. 2d at 269 (stating "no other instruction cured the error by specifically defining the charged crime or limiting the jury's consideration to only the charged alternative.").

In light of the jury's question showing possible confusion by the jury about the third degree rape charge; V.P.'s testimony that any time she mentioned money, "the same thing repeated over again": Menjívar Hernández "would get furious, he would grab [her]," and she "would end up hurt again"; the State's provocative language in argument to emphasize the "arrangement" between V.P. and Menjívar Hernández; and the jury instruction's erroneous inclusion of an uncharged alternative means, it is possible the jury convicted Menjívar Hernández based on the uncharged alternative means, which the State concedes. We hold there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different; the error was prejudicial. Accordingly, we reverse Menjívar Hernández's third degree rape conviction and remand for a new trial on that charge.

## CONCLUSION

There is insufficient evidence to support Menjívar Hernández's conviction for intimidating a witness. Therefore, we reverse Menjívar Hernández's conviction for intimidating a witness and remand to trial court to dismiss the charge of intimidating a witness with prejudice. We also reverse Menjívar Hernández's conviction for third degree rape and remand to the trial court for a new trial.

No. 57526-4-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, P.J.

We concur:

Veljacic, J.

Lawler, J.P.T.[4]

---

[4] Judge Lawler is serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

21